J-S58044-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| DUSTIN PAUL BAILEY | |
| Appellant | No. 2125 MDA 2015 |

Appeal from the PCRA Order November 20, 2015
In the Court of Common Pleas of Franklin County
Criminal Division at No(s): CP-28-CR-0001077-2011

BEFORE: GANTMAN, P.J., BOWES, J., and PLATT, J.*

MEMORANDUM BY GANTMAN, P.J.:         **FILED DECEMBER 30, 2016**

Appellant, Dustin Paul Bailey, appeals from the order entered in the Franklin County Court of Common Pleas, which denied his first petition brought pursuant to the Post Conviction Relief Act ("PCRA"), at 42 Pa.C.S.A. §§ 9541-9546. We affirm.

In its opinion, the PCRA court fully and correctly sets forth the relevant facts and procedural history of this case. Therefore, we have no reason to restate them. We add only that Appellant timely filed a notice of appeal on December 9, 2015. The same day, the PCRA court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant timely complied on December 28, 2015.

Appellant raises the following issues for our review:

_____

*Retired Senior Judge assigned to the Superior Court.

(1) DID [APPELLANT'S] PLEA COUNSEL AND TRIAL COUNSEL OPERATE UNDER A CONFLICT OF INTEREST IN VIOLATION OF [APPELLANT'S] CONSTITUTIONAL RIGHT TO EFFECTIVE COUNSEL?

(2) WAS [APPELLANT'S] TRIAL COUNSEL INEFFECTIVE BECAUSE COUNSEL FAILED TO REQUEST THE CORRECT JURY INSTRUCTIONS FOR SELF-DEFENSE AND DEFENSE OF OTHERS AND FAILED TO OBJECT TO THE INSUFFICIENT INSTRUCTIONS GIVEN TO THE JURY?

(3) WAS [APPELLANT'S] TRIAL COUNSEL INEFFECTIVE BECAUSE COUNSEL FAILED TO OBJECT TO THE INCOMPLETE FLIGHT INSTRUCTION?

(4) WAS [APPELLANT'S] TRIAL COUNSEL CONSTITUTIONALLY INEFFECTIVE BECAUSE COUNSEL FAILED TO REQUEST A LIMITING INSTRUCTION REGARDING PREJUDICIAL TESTIMONY [APPELLANT] WAS A STEROID USER?

(5) WAS [APPELLANT'S] TRIAL COUNSEL INEFFECTIVE BECAUSE COUNSEL FAILED TO SECURE AN EXPERT TO DEMONSTRATE THE STEROID INFORMATION PRESENTED AT TRIAL BY THE COMMONWEALTH WAS INACCURATE AND INSUFFICIENT TO SUPPORT THE COMMONWEALTH'S "MOTIVE" THEORY?

(6) WAS [APPELLANT'S] TRIAL COUNSEL INEFFECTIVE BECAUSE COUNSEL FAILED TO OBJECT TO DR. TURCHI'S TESTIMONY ON THE GROUNDS (A) THE DOCTOR WAS NOT OFFERED AS AN EXPERT BEFORE PROVIDING EXPERT TESTIMONY, (B) DID NOT HAVE THE CREDENTIALS TO TESTIFY ABOUT THE BEHAVIORAL EFFECTS OF STEROID USE, AND (C) DID NOT EMPLOY A METHODOLOGY GENERALLY ACCEPTED IN THE FIELD TO REACH HIS CONCLUSIONS?

(7) WAS [APPELLANT'S] TRIAL COUNSEL INEFFECTIVE BECAUSE COUNSEL FAILED TO OBJECT TO THE COMMONWEALTH'S CLOSING REMARKS CONVEYING THE PROSECUTOR'S PERSONAL OPINION OF THE GENERAL CREDIBILITY OF CERTAIN WITNESSES AND THEIR TESTIMONY?

(8) DID THE PCRA COURT ENTER A DECISION UNSUPPORTED BY THE RECORD AND INCONSISTENT WITH THE LAW WHEN THE PCRA COURT DENIED [APPELLANT'S] CLAIM THE AGGREGATE PREJUDICE OF HIS PRIOR COUNSELS' ERRORS WAS OVERWHELMING AND NECESSITATED A GRANT OF RELIEF UNDER THE POST CONVICTION RELIEF ACT?

(Appellant's Brief at 4).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinions of the Honorable Carol L. Van Horn, we conclude Appellant's issues merit no relief. The PCRA court's opinions comprehensively discuss and properly dispose of the questions presented. (*See* PCRA Court Opinion, filed January 8, 2016, incorporating Order and Opinion, dated November 20, 2015, at 10-58) (finding: **(1)** Appellant was initially represented by public defender, who subsequently gave case to trial counsel; Appellant's initial attorney testified at PCRA hearing that Appellant was not interested in any plea offer which included state sentence; on multiple occasions, Appellant's initial attorney conveyed Commonwealth's offer of two to four years' incarceration to Appellant, who rejected it each time; subsequent trial counsel was looking for cases to help him achieve his capital case certification; nevertheless, trial counsel would have pled case out if Appellant were interested in doing so; record repudiates claim that plea counsel's and trial counsel's interests conflicted; record demonstrates Appellant intended to go to trial from outset and would not accept plea offer that included state time; regarding claim that trial

counsel had no way to obtain steroid expert because trial counsel did not enter formal appearance is irrelevant here (but see issue 5); issue lacks merit; **(2)** regarding claim on deadly force jury instruction, trial counsel explained he believed, at most, simple assault occurred in this case, so instruction on justified use of deadly force was unnecessary and could have confused jury; likewise, counsel's rationale for not objecting to court's instruction as given was based on reasonable trial strategy that case involved self-defense and defense of others, where no serious bodily injury occurred, and Appellant used non-deadly force to aid himself and his sister; for same reason, counsel thought instruction on provocation and retreat was unnecessary; finally, counsel discussed possible instruction on provocation and retreat but thought instruction was unnecessary because this case involved self-defense and defense of others; instruction would have caused jury confusion; **(3)** court's instruction on flight, as read to jury at trial, was missing final portion of standard instruction, which states jury may not find defendant guilty solely on evidence of flight; court did not erroneously instruct jury to convict Appellant based solely on flight; here, omission in court's instruction is not dispositive because, when read in its entirety, flight instruction was adequate and accurate statement of law; evidence of actual flight was unnecessary to warrant flight charge, because trial testimony raised jury question on attempted flight; issue lacks merit; **(4)** trial court denied Appellant's motion *in limine* and allowed Commonwealth to use

evidence of Appellant's steroid use solely to establish motive; nevertheless, evidence of steroid use was limited in scope and comprised only minor part of Commonwealth's case; trial counsel explained at PCRA hearing that he declined to request limiting instruction because he wanted to avoid highlighting steroid issue to jury; trial counsel's references to steroid evidence during cross-examination and closing argument were scarce and did not undermine counsel's overall trial strategy; trial transcript reveals that if steroid evidence had any impact on jury, it was to establish motive; court found unconvincing Appellant's contention that steroid evidence portrayed him as lawbreaker and damaged his credibility; Appellant admitted to *crimen falsi* convictions on direct examination, so jury already knew Appellant had criminal history; Appellant failed to establish prejudice; **(5)** on cross-examination, Appellant's trial counsel extensively called expertise of Commonwealth's witness, Dr. Turchi, into question, revealing that Dr. Turchi had not attended seminar on steroids or read relevant literature in five or six years; Dr. Turchi also confirmed he had not examined Appellant, and that numerous factors could be combined with alcohol to produce "bad result"; although defense expert witness was available to testify and could have been used to contradict Dr. Turchi's steroid testimony, trial counsel elected to pursue rigorous cross-examination instead, to impeach Dr. Turchi regarding his borderline knowledge on subject of steroid use, which counsel characterized as embarrassingly limited and unbelievable; **(6)** Dr. Turchi's

testimony regarding steroid use consisted of answers to four questions; contrary to Appellant's argument, Dr. Turchi did not testify that steroids alone could trigger violence; Dr. Turchi testified steroid use could cause aggression; Dr. Turchi was qualified to opine on different substances or factors which could provoke aggression; on direct, Dr. Turchi testified he had not reviewed Appellant's bloodwork, and Appellant was not his patient; defense counsel's cross-examination was effective and demonstrated Dr. Turchi's limited knowledge of steroids; therefore, Appellant failed to prove he was prejudiced by Dr. Turchi's minimal and general testimony regarding steroid use; **(7)** trial counsel vigorously attacked credibility of Commonwealth's key witnesses and bolstered Appellant's credibility during defense closing argument; prosecutor's attempt to repel attack with statements supporting credibility of Commonwealth's witnesses was fair response; issue lacks merit; **(8)** Appellant's multiple ineffectiveness of counsel claims are individually belied by record or lack arguable merit or counsel had reasonable basis for choices made or Appellant failed to prove prejudice; cumulative prejudice rule is therefore inapplicable to Appellant's case). The record supports the PCRA court's decision, and we see no reason to disturb it. Accordingly, we affirm on the basis of the PCRA court's opinions.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/30/2016

# IN THE COURT OF COMMON PLEAS OF THE 39TH JUDICIAL DISTRICT OF PENNSYLVANIA - FRANKLIN COUNTY BRANCH

| | | |
|---|---|---|
| Commonwealth of Pennsylvania, | : | CRIMINAL ACTION |
| | : | |
| vs. | : | No: 1077-2011 |
| | : | |
| Dustin Paul Bailey, | : | |
| Defendant | : | Honorable Carol L. Van Horn |

## OPINION *sur* PA. R.A.P. 1925(a) AND ORDER OF COURT

Before Van Horn, P.J.

Filed **JAN 08 2016**

Clerk

94

## IN THE COURT OF COMMON PLEAS OF THE 39TH JUDICIAL DISTRICT OF PENNSYLVANIA - FRANKLIN COUNTY BRANCH

| | | |
|---|---|---|
| Commonwealth of Pennsylvania, | : | CRIMINAL ACTION |
| | : | |
| vs. | : | No: 1077-2011 |
| | : | |
| Dustin Paul Bailey, | : | |
| Defendant | : | Honorable Carol L. Van Horn |

## STATEMENT OF THE CASE

On December 12, 2012, the above-captioned Defendant, Dustin Paul Bailey, was convicted by a jury of his peers of Aggravated Assault and Simple Assault. On January 30, 2013, this Court sentenced the Defendant to a period of incarceration in a State Correctional Institution of six to twelve years. On February 8, 2013, the Defendant filed a Post-Sentence Motion. The Commonwealth filed an Answer on March 4, 2013. Hearing was held on the Motion on April 1, 2013. By an Opinion and Order dated May 23, 2013, this Court denied the Defendant's Post-Sentence Motion. Defendant filed a Notice of Appeal on June 14, 2013. On July 9, 2013, Defendant filed his Concise Statement of Matters Complained of on Appeal and this Court by Opinion and Order filed July 22, 2013, requested that the Superior Court dismiss the appeal. The Superior Court affirmed this Court's decision on May 23, 2014.

On September 8, 2014, the Defendant filed a timely Post Conviction Relief Act (PCRA) Petition. Attorney Carolyn Castagna entered her appearance on October 29, 2014. Following two Petitions for Extension of Time to file an Amended PCRA Petition, which this Court granted, the Defendant filed his Amended PCRA Petition on February 27, 2015. Defendant also filed a Memorandum in Support of the Amended PCRA Petition and two Reproduced Records in support of the Petition. On March 30, 2015, Defendant filed an Addendum to his Amended

1

PCRA Petition and a Memorandum in Support. The Commonwealth subsequently filed an Answer to the Amended PCRA Petition on April 14, 2015. Hearing on the Petition occurred on May 4, 2015 at which time the Court directed the parties to file briefs. The Commonwealth filed its brief on July 6, 2015, and the Defendant filed his brief on August 8, 2015.

On November 20, 2015, this Court issued an Opinion and Order denying the Defendant's PCRA Petition. Defendant filed a timely Notice of Appeal on December 9, 2015. Defendant then filed his Concise Statement on December 28, 2015. The Court will now respond to Defendant's claims of error in this Opinion and Order of Court pursuant to Pa.R.A.P. 1925(a).

## ISSUES RAISED

Defendant raises the following issues in his Concise Statement:[1]

1. Did the PCRA court enter a decision unsupported by the record and inconsistent with the law when the PCRA court denied Bailey's claim trial counsel was constitutionally ineffective because counsel failed to request a limiting instruction regarding the steroid testimony?

2. Did the PCRA court enter a decision unsupported by the record and inconsistent with the law when the PCRA court denied Bailey's claim trial counsel was constitutionally ineffective because counsel failed to request the proper justification jury instructions and failed to object to the insufficient instructions read to the jury?

3. Did the PCRA court enter a decision unsupported by the record and inconsistent with the law when the PCRA court denied Bailey's claim trial counsel was constitutionally ineffective because counsel failed to object to the flight instruction as improper and incomplete?

4. Did the PCRA court enter a decision unsupported by the record and inconsistent with the law when the PCRA court denied Bailey's claim trial counsel was constitutionally ineffective because counsel failed to secure an expert to demonstrate the

---

[1] Concise Statement of Errors Complained of on Appeal, 12/28/2015.

2

steroid information presented at trial by the Commonwealth was insufficient to support the Commonwealth's "motive" theory?

5. Did the PCRA court enter a decision unsupported by the record and inconsistent with the law when the PCRA court denied Bailey's claim trial counsel was constitutionally ineffective because counsel failed to object to Dr. Turchi's testimony on the grounds the doctor was not offered as an expert before providing expert testimony, did not have the credentials to testify about the behavior effects of steroid use, and did not employ a methodology generally accepted in the field to reach his conclusion?

6. Did the PCRA court enter a decision unsupported by the record and inconsistent with the law when the PCRA court denied Bailey's claim trial counsel was constitutionally ineffective because counsel failed to request and use Attorney Reibsome's or Attorney Barkdoll's notes from the preliminary hearing for cross-examination at trial?

7. Did the PCRA court enter a decision unsupported by the record and inconsistent with the law when the PCRA court denied Bailey's claim trial counsel was constitutionally ineffective because counsel failed to object to the Commonwealth's closing remarks which conveyed the prosecutor's personal opinion of the general credibility of specific witnesses and their testimony?

8. Did the PCRA court enter a decision unsupported by the record and inconsistent with the law when the PCRA court denied Bailey's claim trial counsel was constitutionally ineffective because counsel failed to advise Bailey his prior convictions would be admitted into evidence if he testified?

9. Did the PCRA court enter a decision unsupported by the record and inconsistent with the law when the PCRA court denied Bailey's claim his preliminary hearing counsel was constitutionally ineffective because counsel failed to obtain a stenographer for the preliminary hearing?

10. Did the PCRA court enter a decision unsupported by the record and inconsistent with the law when the PCRA court denied Bailey's claim his guilty plea counsel and trial counsel was constitutionally ineffective and violated Bailey's right to Due Process because counsel's personal interests directly conflicted with Bailey's interest in the case?

3

11. Did the PCRA court enter a decision unsupported by the record and inconsistent with the law when the PCRA court denied Bailey's claim his post-sentence counsel and direct appeal counsel were constitutionally ineffectively for failing to preserve and argue the conflict interest issue in Bailey's direct appeal?

12. Did the PCRA court enter a decision unsupported by the record and inconsistent with the law when the PCRA court denied Bailey's claim the aggregate prejudice of his prior counsel's errors were overwhelming a necessitated a grant of relief under the Post Conviction Relief Act?

## STANDARD OF REVIEW

Our appellate courts review an order dismissing a petition filed under the PCRA to determine whether the decision of the PCRA court "is supported by evidence of record and is free of legal error." *Commonwealth v. Rivera*, 10 A.3d 1276, 1279 (Pa. Super. 2010) (citation omitted). The scope of review is limited; the reviewing court must view the findings of the PCRA court and the evidence of record in the light "most favorable to the prevailing party at the trial level." *Id.* The decision of the PCRA court may be affirmed "on any grounds if it is supported by the record." *Id.* In the case of a purely legal question, the standard of review is *de novo*, and the scope of review is plenary. *See Commonwealth v. Patton*, 985 A.2d 1283, 1286 (Pa. 2009).

## DISCUSSION

The twelve issues raised by the Defendant were previously raised in his Amended PCRA Motion and Addendum to the PCRA Petition. All of these issues were thoroughly and meticulously addressed by this Court in our November 20, 2015 Opinion and Order of Court which is herein incorporated by reference. We refer the Superior Court to the reasoned analysis set forth in our Opinion. Given the protracted nature of our November 20, 2015 Opinion and in

4

an effort to aid the Superior Court in its review, citations and references are provided in an effort to identify the portions of our Opinion that addressed each of the 12 issues the Defendant raises on appeal.

1. **Failure to Request Limiting Instruction Regarding Steroid Testimony**

   The Court's analysis can be found on pages 10-20.

2. **Failure to Request Proper Justification Instructions and to Object.**

   The Court's analysis can be found on pages 20-23.

3. **Failure to Object to the Flight Instruction**

   The Court's analysis can be found on pages 23-29.

4. **Failure to Obtain Steroid Expert**

   The Court's analysis can be found on pages 29-35.

5. **Failure to Object to Dr. Turchi Testifying as an Expert Witness**

   The Court's analysis can be found on pages 35-38.

6. **Failure to Obtain Prior Counsel's Notes from Preliminary Hearing**

   The Court's analysis can be found on pages 41-42.

7. **Failure to Object to the Prosecutor's Closing Argument**

   The Court's analysis can be found on pages 42-49.

8. **Failure to Advise Defendant of *Crimen Falsi* Implications**

   The Court's analysis can be found on pages 50-51.

9. **Failure to Obtain a Stenographer for the Preliminary Hearing**

   The Court's analysis can be found on pages 38-41.

**10. Plea Counsel and Trial Counsel Failed to Advise Defendant of Conflict of Interest**

The Court's analysis can be found on pages 51-55.

**11. Post-Sentence and Direct Appeal Counsel were ineffective**

The Court's analysis can be found on pages 56-57.

**12. Aggregate Prejudice of Prior Counsel's Errors**

The Court's analysis can be found on pages 57-58.

## CONCLUSION

For all of the reasons thoroughly explained in this Court's November 20, 2015 Opinion, we respectfully request that the Superior Court dismiss the appeal of the Defendant.

# IN THE COURT OF COMMON PLEAS OF THE 39TH JUDICIAL DISTRICT OF PENNSYLVANIA - FRANKLIN COUNTY BRANCH

| | | |
|---|---|---|
| Commonwealth of Pennsylvania, | : | CRIMINAL ACTION |
| | : | |
| vs. | : | No: 1077-2011 |
| | : | |
| Dustin Paul Bailey, | : | |
| Defendant | : | Honorable Carol L. Van Horn |

## ORDER OF COURT

AND NOW THIS 8th DAY OF January, 2016, pursuant to Pa. R.A.P. 1931(c),

IT IS HEREBY ORDERED THAT the Clerk of Courts of Franklin County shall promptly transmit to the Prothonotary of the Superior Court the record in this matter along with the attached Opinion *sur* Pa. R.A.P. 1925(a).

*Pursuant to Pa. R. Crim. P. 114, the Clerk of Courts shall immediately docket this Opinion and Order of Court and record in the docket the date it was made. The Clerk shall forthwith furnish a copy of the Opinion and Order of Court, by mail or personal delivery, to each party or attorney, and shall record in the docket the time and manner thereof.*

By the Court,

_Carol L. Van Horn_
Carol L. Van Horn, P.J.

copies:
Lauren Sulcove, Franklin County First Assistant District Attorney
Carolyn A. Jones, Esq., Counsel for Defendant

7

**Dustin Paul Bailey**
**1077 of 2011**

Jan. 11, 2016, served a true/attest copy of the **OPINION & ORDER OF COURT** dated Jan. 8, 2016 signed by Judge Van Horn, filed Jan. 8, 2016 by placing a copy of the same in the **Inter Office Mail** to the following,

District Attorney

Jan. 11, 2016, served a true/attest copy of the **OPINION & ORDER OF COURT** dated Jan. 8, 2016 signed by Judge Van Horn, filed Jan. 8, 2016 by placing a copy of the same in the **U.S. Mail** to the following,

Carolyn Ann Castagna Jones
Levin & Zeigler, LLP
1500 JFK Blvd
Suite 620
Philadelphia, PA  19102

Deputy Clerk

# IN THE COURT OF COMMON PLEAS
## OF THE 39TH JUDICIAL DISTRICT OF PENNSYLVANIA
### FRANKLIN COUNTY BRANCH

| | | |
|---|---|---|
| Commonwealth of Pennsylvania, | : | **Criminal Action** |
| | : | |
| | : | **No. 1077-2011** |
| vs. | : | |
| | : | |
| | : | |
| **Dustin Paul Bailey,** | : | *Post Conviction Relief Act* |
| **Defendant** | : | **Honorable Carol L. Van Horn** |

## OPINION AND ORDER OF COURT

Filed **NOV 23 2015**

~~Nancy Marshall~~ Clerk

Before Van Horn, P.J.

1

## IN THE COURT OF COMMON PLEAS
## OF THE 39TH JUDICIAL DISTRICT OF PENNSYLVANIA
## FRANKLIN COUNTY BRANCH

| | | |
|---|---|---|
| Commonwealth of Pennsylvania, | : | Criminal Action |
| | : | |
| | : | No. 1077-2011 |
| vs. | : | |
| | : | |
| | : | |
| Dustin Paul Bailey, | : | *Post Conviction Relief Act* |
| Defendant | : | Honorable Carol L. Van Horn |

## STATEMENT OF THE CASE

The above-captioned Defendant was charged with aggravated assault[1] and simple assault[2] and waived formal arraignment on July 27, 2011. The charges were a result of an altercation where the Defendant slammed the victim into a toilet, with enough force to break the toilet and punched the victim multiple times. The Defendant was originally represented at his preliminary hearing by Attorney Christopher Reibsome. Following his preliminary hearing, the Defendant was represented by Attorney Mike Palermo, although Attorney Palermo never formally entered his appearance.[3] On November 30, 2012, the Defendant filed a Motion in Limine in an attempt to preclude his alleged steroid use as evidence at trial. The Commonwealth filed an Answer on December 7, 2012. The Honorable Richard J. Walsh denied the Defendant's Motion on December 10, 2012.[4] Trial was held on December 11-12, 2012, and the jury returned a verdict of guilty on both charges.[5] Judge Walsh subsequently retired and the case was reassigned to this Court. At sentencing, the Defendant obtained the representation of Attorney Steve Rice. On

---

[1] 18 Pa.C.S.A. § 2702.

[2] 18 Pa.C.S.A. § 2701.

[3] According to the official docket, Attorney Reibsome also never officially formally withdrew his appearance.

[4] Judge Walsh's Order stated that the prosecution could use evidence of the Defendant's steroid use to establish motive, not to "blacken" the character of the Defendant. *See* Order, 12/10/2012.

[5] The court consolidated trial in this case, CP-28-CR-1077-2011, with the simple assault case of *Commonwealth v. Billy Jo Bailey*, CP-28-CR-1087-2011. *See* Order, 5/4/2012.

January 30, 2013, this Court sentenced the Defendant to a period of incarceration in a state correctional institution of six to twelve years.

On February 8, 2013, the Defendant filed a Post-Sentence Motion. The Commonwealth filed an Answer on March 4, 2013. Hearing was held on the Motion on April 1, 2013. By an Opinion and Order dated May 23, 2013, this Court denied the Defendant's Post-Sentence Motion. Attorney Steve Rice subsequently filed a Motion to Withdraw as Counsel which this Court granted. The Court reappointed Attorney Reibsome to serve as appellate counsel for Defendant. Defendant filed a Notice of Appeal on June 14, 2013. On July 9, 2013, Defendant filed his Concise Statement of Matters Complained of on Appeal. On July 22, 2013, this Court by Opinion and Order requested that the Superior Court dismiss the appeal. The Superior Court affirmed this Court's decision on May 23, 2014.

On September 8, 2014, the Defendant filed a timely Post Conviction Relief Act (PCRA) Petition. Attorney Carolyn Castagna entered her Entry of Appearance on October 29, 2014. Following two Petitions for Extension of Time to file an Amended PCRA Petition, which this Court granted, the Defendant filed his Amended PCRA Petition on February 27, 2015. Defendant also filed a Memorandum in Support of the Amended PCRA Petition and two Reproduced Records in support of the Petition. On March 30, 2015, Defendant filed an Addendum to his Amended PCRA Petition and a Memorandum in Support of it. The Commonwealth subsequently filed an Answer to the Amended PCRA Petition on April 14, 2015. Hearing on the Petition occurred on May 4, 2015 at which time the Court directed the parties to file briefs. The Commonwealth filed its brief on July 6, 2015, and the Defendant filed his brief on August 8, 2015.

3

After careful and diligent consideration of Defendant's Amended PCRA Petition, the Commonwealth's Answer to the Petition, hearing on this matter held on May 4, 2015, briefs filed by both parties and the relevant case law, this Court finds that for the reasons stated below that the Defendant is not entitled to relief under the PCRA.

## BACKGROUND

The above-captioned charges arose out of events that transpired during the night of May 6, 2011, and the early morning of May 7, 2011. At around 11:00 p.m. on May 6, 2011, Paul Bowersox (Victim), Megan Millhouse and Billy Jo Bailey were drinking at the Orchards Restaurant and Lounge ("Orchards") in Chambersburg, Pennsylvania. Billy Jo is the sister of the Defendant. Although they were not together at the time of the incident in question, Megan Millhouse and the victim had dated off and on for a while and were together at the time of trial. N.T. Trial, 12/11/12, at 127. Sometime around 3:00 a.m. in early morning hours of May 7, 2011, the group of three left Orchards and headed to the Defendant's apartment. *Id.* at 67, N.T. Trial, 12/12/12, at 65.

When the group arrived, the Defendant invited them inside his apartment. At this point, a younger female companion of the Defendant was also present at the party who he identified as "DeeDee." N.T. Trial, 12/12/12 at 12-13. The five individuals continued to party and drink a bottle of Calico Jack[6] supplied by the Defendant. *Id.* at 7-8. At around 5 a.m. the group was in the living room listening to music and dancing. N.T. Trial, 12/11/12, at 71. At trial, Megan Millhouse testified that during this time period she and the Defendant engaged in a conversation about his build and size. *Id.* at 138. In response, she testified that the Defendant told her that he used steroids and actually showed her his steroid kit. *Id.* The Defendant contended this never occurred and that her testimony was a total lie. N.T. Trial, 12/12/12, at 12.

---

[6] Calico Jack is a type of spiced rum.

4

Following some type of argument or altercation with Billy Jo and the Defendant,[7] the two ended up in the bathroom with Megan Millhouse. The victim testified he went to the bathroom and knocked on the door to ask Megan if she was about ready to leave. N.T. Trial, 12/11/12, at 76. The door opened and the victim stepped inside. Suddenly, Billy Jo looked at the Defendant and yelled "fucking get him, Dustin." *Id.* at 76. The Defendant then lunged at the victim and slammed him into the toilet. *Id.* at 77. The Defendant then began to punch the victim repeatedly. At this point the bathroom was covered in water and blood from the victim. Eventually, the Defendant stopped and the victim and Megan quickly left his apartment.

After leaving the apartment, the victim called 911 and was later transported by ambulance to the Chambersburg Hospital. *Id.* 83-84. The victim suffered a left eye orbital floor fracture in two different places with consequent hemorrhage. *Id.* at 224. The victim also complained of severe right-sided lumbar pain. *Id.* at 226. At trial, Dr. Turchi testified this was likely caused from twisting in the fall from being punched. *Id.* Finally, the victim sustained a chipped tooth from the incident. In all, the injuries the victim sustained caused him to miss approximately five months of work. *Id.* at 87.

Following the victim's 911 call, Trooper James Shearer and Trooper Kevin Goss of the Pennsylvania State Police (PSP) arrived at the scene. N.T. Trial, 12/12/12, at 269. After speaking briefly with the victim and Megan Millhouse, the troopers knocked on the front door of the Defendant's apartment. *Id.* Trooper Shearer testified at trial that the Defendant told him that he and the victim had been involved in a "wrestling match." *Id.* at 274. At this point, the Defendant was not arrested. Trooper Shearer subsequently interviewed the victim and Megan Millhouse at the Chambersburg Hospital.

---

[7] There was conflicting testimony presented as to actually what occurred between the two.

5

The Defendant was arrested by Trooper Shearer on May 9, 2011 outside of his apartment. Trooper Shearer stated that he and another trooper knocked on the Defendant's front door and announced that they needed to speak to him. N.T. Trial, 12/11/12, at 278. Although the troopers could hear voices and individuals moving around in the apartment, no one answered the door. *Id.* at 278-279. In response, the troopers set up a perimeter around the Defendant's residence in order to observe if he would leave. *Id.* at 279. Shortly after doing so, the Defendant left his residence. *Id.* 280. The Defendant then looked around the area to see if anyone was watching and subsequently entered his vehicle. *Id.* at 280-281. He then quickly attempted to drive off before he was stopped and apprehended by police. *Id.* at 281.

At trial, the Defendant asserted a self-defense/defense of others defense. Specifically, the Defendant claimed that he reasonably believed his sister was in imminent danger of being harmed by the victim and that is why the physical altercation began. Further, Defendant argued he was simply defending himself from the victim after the victim bit his finger and would not let go. In its case and chief, the Commonwealth called the victim, Megan Millhouse, Ryan Shelly, M.D.,[8] Dr. Turchi, M.D., Lori Odom,[9] and Trooper James Shearer to testify. The majority of the case presented by the Defendant was his own testimony. The Commonwealth subsequently called the victim as a rebuttal witness. Ultimately, the jury found the Defendant guilty on all charges.

---

[8] Dr. Shelly was the ER physician at the Chambersburg Hospital who ordered the CT Scan of the victim's head and facial bones upon his arrival at the hospital.

[9] Lori Odom was a registered nurse who was in contact with the victim and Megan Millhouse when they arrived at the Chambersburg Hospital emergency room.

## ISSUES

Defendant raises a total of thirteen (13) issues, most of which are alleged ineffective assistance of counsel claims against his trial attorney, Mike Palermo. Specifically, Defendant claims the following issues:

1. Trial Counsel provided ineffective assistance of counsel because he failed to request a limiting instruction regarding the steroid testimony.

2. Trial Counsel provided ineffective assistance of counsel because he failed to request the proper justification jury instructions and failed to object to the insufficient instructions read to the jury.

3. Trial Counsel provided ineffective assistance of counsel because he failed to object to the flight instruction.

4. Trial Counsel provided ineffective assistance of counsel because he failed to secure an expert to demonstrate that the information presented in the Commonwealth's pretrial motion and at trial was insufficient to conclude the Defendant's actions were motivated by steroid use.

5. Trial Counsel provided ineffective assistance of counsel because he failed to object to Dr. Pierre Turchi's testimony on the basis that Dr. Turchi was not qualified to testify as an expert about the behavioral effects of steroid use and failed to object to the testimony on the basis Dr. Turchi did not employ a methodology generally accepted in the field.

6. Preliminary Hearing Counsel provided ineffective assistance of counsel because he failed to obtain a stenographer for the preliminary hearing.

7. Trial Counsel provided ineffective assistance of counsel because he failed to request and use Attorney Reibsome's notes from the preliminary hearing.

8. Trial Counsel provided ineffective assistance of counsel because he failed to object to the prosecutor's closing remarks that conveyed her personal opinion on the credibility of certain witnesses and their testimony.

9. Trial Counsel provided ineffective assistance of counsel because he failed to advise the Defendant that his prior convictions would be admitted into evidence if he testified.

10. Plea counsel did not provide adequate advice concerning the offer of 2 to 4 years because counsel accepted the case on the premise it would be a trial. Defendant's plea counsel was

7

ineffective and labored under a conflict of interest that violated the Defendant's right to due process.

11. Post-Sentence Counsel provided ineffective of assistance of counsel for failing to raise the conflict of interest issue.

12. Direct Appeal Counsel provided ineffective assistance of counsel for failing to raise the conflict of interest issue.

13. The aggregate prejudice of prior counsel's errors resulted in ineffective assistance of counsel.

## DISCUSSION

### 1. Post Conviction Relief Act

The Post Conviction Relief Act (PCRA) was enacted to provide individuals who are convicted of crimes for which they are innocent, or those serving illegal sentences, with a means to obtain collateral relief. *See* 42 Pa.C.S. § 9543. First, the defendant must demonstrate he was convicted of a crime under the law of Pennsylvania, and that he is currently serving a sentence or waiting to do so. *See* 42 Pa. C.S. §9543(a)(1). Second, the petitioner must prove, by a preponderance of the evidence, that his conviction or sentence resulted from one or more of the enumerated statutory factors. *See* 42 Pa. C.S. §9543(a)(2). Third, a petitioner must demonstrate the issues raised under the Act have not been previously litigated or waived, and finally, that the failure to litigate such issues could not have resulted from a rational, strategic, or tactical decision by counsel. *See id.* at §9543(a)(1), (3), (4). "Inherent in this pleading and proof requirement is that the petitioner must not only state what his issues are, but also he must demonstrate in his pleadings and briefs how the issues will be proved." *Commonwealth v. Rivers*, 786 A.2d 923, 927 (Pa. 2001).

8

## A. Claims of Ineffective Assistance of Counsel

Among the statutory factors from which a conviction or sentence may have resulted creating an entitlement to post-conviction relief is the ineffective assistance of counsel. 42 Pa.C.S. §9543(a)(2)(ii). In light of the particular circumstances of a case, the ineffective assistance of counsel must have so undermined the truth-determining process that "no reliable adjudication of guilt or innocence could have taken place." *Id.*

Counsel is presumed effective. *See Commonwealth v. Martin*, 5 A.3d 177, 183 (Pa. 2010). The defendant bears the burden of proving otherwise, accomplished by satisfying the three-pronged test laid out by our appellate courts in *Pierce. See Commonwealth v. Pierce*, 786 A.2d 203, 213 (Pa. 2001). First, the defendant must show the underlying substantive claim has arguable merit. *See id.* Second, it must be demonstrated that counsel did not have any reasonable basis for their acts or failure to act designed to effectuate the client's interest. *See id.* Finally, a petitioner must demonstrate actual prejudice resulted from counsel's inadequate performance. *See id.* A petitioner demonstrates prejudice where he proves that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See Commonwealth v. Johnson,* 966 A.2d 523, 533 (Pa. 2009).

Failure to satisfy any of the three prongs of the test will result in denial of the claimed ineffective assistance. *See Pierce,* 786 A.2d at 221-22. The inquiry mirrors that set forth by the United States Supreme Court, requiring both a showing that counsel's performance was deficient, and that such deficiency was prejudicial. *See Strickland v. Washington,* 466 U.S. 668, 687-91 (1984).

9

## ANALYSIS

## I.    Limiting Instruction on Steroid Evidence

### A. Arguable Merit

In his initial argument, Defendant asserts that his trial counsel, Attorney Michael Palermo, was ineffective for failing to request a limiting instructing for the steroid evidence admitted at trial. The Defendant correctly states that the Pennsylvania Rules of Evidence generally prohibit evidence of other crimes, wrongs or acts as evidence of a defendant's character. *See* Pa. R.E. 404(b)(1). "Evidence of separate or unrelated 'crimes, wrongs, or acts,' . . . has long been deemed inadmissible as character evidence against a criminal defendant in this Commonwealth as a matter not of relevance, but of policy, i.e., because of a fear that such evidence is so powerful that the jury might misuse the evidence and convict based solely upon criminal propensity." *Commonwealth v. Dillon*, 925 A.2d 131, 136-37 (Pa. 2007). However, "evidence of 'other crimes, wrongs, or acts' may be admitted when relevant for a purpose other than criminal character/propensity, including: proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake." *Id.*

When evidence of other crimes or acts is admissible for reasons other than character, the Defendant is entitled to "a limiting instruction [which] may be given either as the evidence is admitted or as part of the general charge." *Commonwealth v. Covil*, 378 A.2d 845 (Pa. 1977). However, our High Court has expressly stated that there may be times that trial counsel decides against seeking a cautionary instruction or objecting on a particular point because such "objections sometimes highlight the issue for the jury, and curative instructive always do." *Commonwealth v. Koehler*, 36 A.3d 121, 146 (Pa. 2012). This is especially true in situations

10

where the evidence is "merely a fleeting or vague reference" *Commonwealth v. Hutchinson*, 811 A.2d 556, 561-62 (Pa. 2002).

In the instant case, the Defendant filed a Motion in Limine on November 30, 2012, seeking to preclude the mentioning of steroid use or "roid rage" on the part of the Defendant at trial. The Commonwealth filed an Answer to the Motion in Limine on December 7, 2012. On December 10, 2012, Judge Walsh ruled on the Motion stating "the Defendant's Motion is denied. The prosecution's use of such evidence shall be solely to establish motive, and may not be used to 'blacken' the character of the Defendant." *See* Order 12/1/12. At trial, the following steroid evidence was provided on direct examination by the Commonwealth's witness Dr. Pierre Turchi, M.D.:

> Q: Finally, Dr. Turchi, and this is an altogether different subject. I'd like to talk to you a little bit, very briefly, about steroid use. Have you had the opportunity to receive any training or read any literature about steroid use?
> A: Yes.
> Q: And would it be fair to say that use of steroids can cause a person to become more aggressive than they normally are?
> A: Most definitely, yes.
> Q: If hypothetically speaking, if someone took steroids and then had alcohol on top of that, would that change the aggression in any way?
> A: It would make it far worse because alcohol removes the inhibition. We are less shy when we drink a little bit, so if you add steroids then alcohol, that is a bad combination.
> Q: In all fairness, sir, to your knowledge, you've never treated Dustin Bailey as a patient; correct?
> A: No.

N.T. Trial, 12/11/12, at 237-238. On cross examination Dr. Turchi stated:

> Q: Tell me, Doctor, when is the last time you attended a seminar on steroid use?
> A: I cannot give you an exact number but it was probably at Chambersburg Hospital when there was a conference about it, and it was pretty impressive.
> Q: I'm sure it was but was it this year, was it last year?

A: Oh, I'm sorry, it was five six years ago but it was very well done.

Q: When is the last time you read some publication about steroid use?

A: I think around that time because I was interested.

. . .

Q: And you haven't examined any blood of the [Defendant] have you?

A: No.

. . .

Q: We're asking you what if. What if somebody had steroids mixed with alcohol and you're saying it would be a bad result; right?

A: Yes.

Q: There are a number of factors that could it a bad result though; right, outside factors? Being in a bar with other people?

A: Yes.

*Id.* at 239-240. Regarding the Defendant's alleged use of steroids, the Commonwealth's witness

Megan Millhouse testified to the following at trial:

A: I asked him about his build.

Q: What did you ask him exactly?

A: If he took steroids.

Q: Why did you ask him that?

A: Because there's a lot of hype that goes along with steroids. He was really really muscular, a lot larger than what he appears to be today.

Q: And how did he respond when you asked him that question?

A: He went and got them and he showed them to me.

. . .

Q: Just asking can you describe what they looked like?

A: He had them in a black zipper case and there was a syringe and some vials.

Q: Did he say anything about whether or not he used those steroids?

A: He admitted to using them because questions that ensued afterwards were directed as how do they affect you? Do they ever cause roid rage? Do you ever experience anything like that?

Q: And what did he say?

A: He claimed that they were perfectly safe and harmless.

12

> Q: What as your motive for asking him those questions?
> A: Just you assume that people that are stout and built that way do it generally by lifting weights only and it's apparently a rather large misconception.

*Id.* at 138-139.

Based on the aforementioned testimony, Defendant avers that trial counsel should have objected to the steroid evidence or requested a limiting instruction. Because the steroid evidence was admitted by Judge Walsh to be used solely for motive pursuant to Pa. R.E. 404(b), Defendant argues that he was entitled to a limiting instruction and if one was requested and the Court refused, reversible error would have occurred. *See Commonwealth v. Billa*, 555 A.2d 835, 842 (Pa. 1989). Consequently, Defendant concludes Attorney Palermo's failure to request a limiting instructing satisfies the arguable merit prong of *Pierce*. The Commonwealth fails to address the first prong of *Pierce* on this issue and simply states that Defendant has failed to prove the second and third prongs. Based on the Commonwealth's failure to address this issue and case law which makes it clear that Attorney Palermo could have requested a limiting instruction, we find that the Defendant has satisfied the initial prong of *Pierce*.

### B. Reasonable Strategy

The Defendant argues that Attorney Palermo was not following a reasonable strategy when he failed to request a limiting instruction regarding the steroid evidence. Defendant contends that Attorney Palermo recognized how prejudicial the steroid evidence could be, illustrated by the fact he filed a Motion in Limine to keep the evidence out at trial, yet he failed to ask the Court to issue a limiting instruction. Consequently, Defendant concludes not requesting such an instruction was error and could not have been part of any trial strategy by Attorney Palermo.

In support of his argument on this issue, Defendant cites various statements made by

13

Attorney Palermo at the PCRA Hearing.  Specifically, when asked why he failed to request a limiting instruction at trial Attorney Palermo testified:

> A: Well, in this kind of case when you ask for a motion in limine and lose, I think strategically you run the risk do you bring it up again, put it in front of the jury again or let it die out. I'm not sure as I sit here today my theory wasn't lets not bring this up anymore than I have to about the steroid issue. I don't believe I asked for a limit instruction at the close of trial.
>
> [The Court] Q: Why was that?
>
> A: Your honor, I'm not sure if that was just a strategic decision not to bring it up and put it in front of the jury again, draw their attention to it. I can't say as I sit here what the rationale was. But that's a discussion I have when we lose a motion limine issue when it's in front of the jury whether I want to bring it up at the close of trial to remind them of it.

N.T. PCRA Hearing, 5/4/15, at 75-76. Defendant alleges that Attorney Palermo's purported reason for failing to request a limiting instruction, concerns about bringing the issue up again and reminding the jury, is not supported by the record. Defendant points to the fact that Attorney Palermo failed to let the issue "die out" on multiple occasions.  First, Defendant highlights that Attorney Palermo asked Dr. Turchi numerous questions regarding steroids on cross-examination. Additionally, Defendant places significant emphasis on the fact that Attorney Palermo referenced the steroid allegations multiple times in his own closing argument. As such, Defendant concludes that Attorney Palermo would have not have taken these actions if his strategy was to let this issue "die out" as he claimed at the PCRA hearing. Furthermore, Defendants avers that even if Attorney Palermo intentionally chose not to request the limiting instruction, that such a decision was not reasonable given the facts in this case.

14

The Commonwealth argues that the Defendant fails to satisfy the second prong of *Pierce* because a curative instruction always highlights the issue to the jury and that Attorney Palermo reasonably opted not to request one in this case because the steroid evidence in question was "merely a fleeting or vague reference." *See Hutchinson*, 811 A.2d at 561-562. According to the Commonwealth, the evidence of the Defendant's steroid use was not extensive and consisted of seven out of nearly five hundred pages of the trial transcript. The Defendant disputes this and claims that the alleged steroid use is referenced on seventeen pages. Furthermore, the Defendant contends that the steroid evidence was a major part of the Commonwealth's case, as it was the sole motive offered at trial for this crime.

Regardless of whether steroid use was referenced on seven or seventeen pages of the trial transcript, this Court agrees with the Commonwealth that this evidence certainly was not extensive. The Defendant's contention that Attorney Palermo failed to let the issue "die out" on multiple occasions, thus undermining his purported reason for deciding not to a request a limiting instruction is equally unavailing. Attorney Palermo mentioned steroids on cross-examination of Dr. Turchi in approximately four or five very general questions, which consisted of two pages of the trial transcript. In his closing argument Attorney Palermo stated the following regarding the Defendant's alleged steroid use:

> And they want to bring that up and they want to talk about steroids use. Honesty I have no clue where that came from. They were talking to the doctor about that for the first time on Friday of last week about this steroid issue. If that was such a big deal - -
>
> . . .
>
> So you have to believe there's Deedee, Ms. Bailey, my client, Mr. Bowersox and Ms. Millhouse and [the Defendant] I guess comes out to the common area with this steroid kit because that's what you do after meeting her for the second day.

15

N.T. Trial, 12/12/12, at 145. These statements consisted of a single page of the trial transcript. This Court does not believe that such scarce references to the Defendant's alleged steroid during cross-examination of Dr. Turchi and in Attorney Palermo's closing argument undermine Attorney Palermo's theory and strategy for not requesting a limiting instruction on this issue.

We must next determine whether Attorney Palermo's reason for deciding against requesting a limiting instruction on the Defendant's steroid use had a reasonable basis. To satisfy the second prong of *Pierce*, the Defendant must demonstrate that counsel did not have any reasonable basis for their acts or failure to act designed to effectuate the client's interest. *See Pierce* 786 A.2d at 213. A reasonable basis must be one designed to effectuate the client's interest, and in making this assessment, the court is not to employ a hindsight evaluation to determine whether other alternatives may have been more reasonable, but whether there was a reasonable basis for the course of action actually selected. *Commonwealth v. Charleston*, 94 A.3d 1012 (Pa. Super. 2014). A claim of ineffective assistance generally cannot succeed through comparing, by hindsight, the trial strategy employed with alternatives not pursued. *See Commonwealth v. Chester*, 587 A.2d 1367, 1384 (Pa. 1991). A finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued. *See Commonwealth v. Brown*, 676 A.2d 1178 (Pa. 1996).

Based on this standard, this Court concludes that Attorney Palermo's reasoning for not requesting a limiting instruction had a reasonable basis. Attorney Palermo explained at the PCRA hearing that he did not request a limiting instruction because he wanted to avoid highlighting the steroid issue to the jury. As noted by the Pennsylvania Supreme Court, curative or limiting instructions always highlight the issue to the jury. *Koehler*, 36 A.3d at 146. Thus, it

16

was clearly reasonable for Attorney Palermo to seek a course of action in order to prevent highlighting this issue again to the jury. Furthermore, the alternative not pursued by Attorney Palermo, actually requesting the limiting instruction, certainly cannot be said to have "offered a potential for success substantially greater than the course actually pursued." *Brown*, 676 A.2d at 1178. The only benefit of requesting such an instruction would have been to prevent the steroid evidence from "blackening" the Defendant's character. Review of the trial transcript reveals that if a reference to the Defendant's alleged steroid had any impact on the jury's decision it was in establishing motive, which Judge Walsh had previously found was proper, and not casting the Defendant in a negative light because he used steroids. For all these reasons, this Court finds that the Defendant has failed to satisfy the second prong of *Pierce*.

## C. Prejudice

Assuming arguendo that the Defendant could satisfy the second prong of *Pierce*, he fails to show he was prejudiced by Attorney Palermo's actions. To satisfy the third prong of *Pierce* on this issue, a Defendant must show that it was reasonably probable that if the limiting instruction had been given, the jury's verdict would have been different. *Commonwealth v. Cox*, 983 A.2d 666, 689-690 (Pa. 2009). The Defendant argues that Attorney Palermo failure to request the limiting instruction resulted in significant prejudice and that the steroid evidence was "extremely inflammatory." Def.'s 2/27/15 Memorandum in Law at 3. Specifically, the Defendant asserts that the steroid evidence portrayed him as a drug user and lawbreaker. The Defendant concludes that the jury's verdict would have likely been different if the limiting instruction had been given because his credibility in this case was essential and evidence of illegal drug use significant damaged that. In support of this argument the Defendant cites *Commonwealth v. Billa*, 555 A.2d 835, 842 (Pa. 1989).

17

In *Billa*, the Pennsylvania Supreme Court held that where evidence of a defendant's prior criminal conduct or bad acts is admissible, that the defendant is entitled to a limiting instruction explaining the purpose of that evidence. *Id.*at 842-843. If a trial counsel requests this limiting instructing, and the court denies the request, it is reversible error. *Id.* In *Commonwealth v. Hutchinson*, 25 A.3d 277, 305-306 (Pa.2011), our High Court provided the following summary of the facts in *Billa*, stating:

> In *Billa,* we granted the appellant a new trial after concluding that his counsel was ineffective for failing to request a limiting instruction. The appellant had been found guilty of the first-degree murder of a sixteen-year-old girl with whom he had been attempting to establish a relationship. The trial court had admitted, over defense counsel's vigorous objection, testimony concerning a violent sexual assault on a different victim that had been committed by the appellant approximately two months before the murder. The two attacks bore numerous similarities, including the fact that both victims were young Hispanic females. **Although we noted that the testimony of the sexual assault victim was vivid, graphic, highly prejudicial, and potentially emotional, we held that it was properly admitted because of its relevance to proving the appellant's motive and intent and the absence of accident.** Nonetheless, we also held that trial counsel was ineffective for failing to request an appropriate limiting instruction. We recognized that the highly inflammatory testimony of the prior sexual assault victim "created the substantial danger that the jury could be swayed in its deliberations ... by this evidence showing [the] appellant's criminal character and his propensity to sexually assault young Hispanic females." In addition, we recognized that the evidence in question was not merely a fleeting or vague reference to the appellant's criminal record, but rather was extensive as well as inflammatory, comprising a substantial component of the Commonwealth's case and garnering an emphasis in closing argument. Accordingly, " [a]n appropriate limiting instruction ... would not have increased the jury's awareness of the prior sexual assault, but it well might have placed its limited legal significance in proper perspective." We concluded that the *Billa* appellant's counsel was constitutionally ineffective for failing to request an appropriate limiting instruction as to the permissible use of evidence of the prior sexual assault, and we therefore awarded the appellant a new trial.

18

(emphasis added) (internal citations omitted). The *Billa* Court determined that the reference to the defendant's criminal record was not merely fleeting or vague, because it was found to be: (1) extensive (2) inflammatory (3) emphasized by the Commonwealth in its closing argument and (4) a substantial component of the Commonwealth's case. *Billa,* 555 A.2d at 843. In contrast, the Commonwealth relies on *Commonwealth v. Blystone,* 725 A.2d 1197, 1204-1205 (Pa. 1999), where the Pennsylvania Supreme Court found that trial counsel failing to object to a mere passing reference of criminal activity did not result in prejudice where evidence of guilt was overwhelming. The Commonwealth also cites *Commonwealth v. Sam,* 635 A.2d 603 (Pa. 1993) and *Commonwealth v. Rollins,* 580 A.2d 744 (Pa. 1990) where the Pennsylvania Supreme Court found that ineffective assistance claims were without merit because the defendants had failed to prove prejudice.

At the outset, this Court finds that the Defendant's contention that the steroid evidence portrayed him as a lawbreaker and this somehow damaged his credibility to be particularly unconvincing. On direct examination the Defendant admitted that he pled guilty in 2003 for convictions for theft and conspiracy to commit robbery. N.T. Trial, 12/12/12, at 21-22. Thus, the jury knew at a minimum that the Defendant was previously not a law abiding citizen. Thus, even if the jury's decision was influenced by the fact that they believed the Defendant was a lawbreaker, it is very unlikely they arrived at that conclusion because of the evidence the Defendant used illegal drugs rather than his own admission of *crimen falsi* convictions.

Regarding the case law cited by the parties, this Court finds the facts in the instant matter are not completely analogous to either *Billa* or *Blystone.* Rather, this case likely falls somewhere in between these two cases and their holdings. Despite argument from the Commonwealth, this case is distinguishable from *Blystone* because it cannot be said that the Defendant's guilt was

19

overwhelming. As the Defendant correctly highlights, this case came down to a credibility contest between the Defendant and the victim. However, this case is also clearly distinguishable from *Billa*. The references to the Defendant's alleged steroid use can hardly be considered as "extensive or inflammatory" as the prior sexual assault victim's testimony was in *Billa*. Further, the evidence was merely mentioned in the Commonwealth's closing argument, not emphasized as it was in *Billa*. This Court does agree with the Defendant that the steroid evidence was a substantial component of the Commonwealth's case. However, the prior criminal activity was so analogous to the crime charged in *Billa* that our High Court was constrained to award a new trial because it could not conclude "with any reasonable certainty that the jury would have returned the same verdict of murder of the first degree had it been properly instructed." *Billa*, 555 A.2d at 842-843. In the instant matter the prior criminal or bad act was illegal drug use. The crimes charged were aggravated assault and simple assault. Thus, this case is clearly distinguishable from the factual circumstances of *Billa*. Additionally, the Defendant's credibility in this matter may have already been cast in doubt in the minds of the jurors by his two previous *crimen falsi* convictions. Despite not finding the evidence in this case necessarily overwhelming as was the situation in *Blystone*, this Court does not believe there was a reasonable probability that the outcome of the Defendant's trial would have been different had Attorney Palermo requested a limiting instruction on the steroid evidence. Consequently, the Defendant has failed to prove prejudice and meet the third prong of *Pierce*.

## II.     Jury Instruction on Justification

### A.     Arguable Merit

At trial, Attorney Palermo requested the Court provide the jury with instructions for use of non-deadly force in self-defense and defense of others. There was no request that the Court

20

provide instructions for the use of deadly force in self-defense or in defense of others. Defendant concludes that the requested instructions were flawed because the jury may have believed that the non-deadly force instruction provided a justification defense only to the charge of simple assault and not the aggravated assault. Thus, he asserts that the instructions were misleading and confusing to the jury. Additionally, Defendant asserts that counsel was ineffective for failing to request an instruction that he had no duty to retreat in his own home. The Commonwealth contends that when the instructions in this case are read as a whole and in context with the entire trial, Attorney Palermo was not obliged to object to them and failure to do so did not cause the convictions.

It is undisputed that only the non-deadly force instruction for self-defense and defense of others were given at trial. Section 9.501 of the Pennsylvania Criminal Jury Instructions states the following for Justification: Use of Force/Deadly Force in Self-Defense when an issue is raised as to the use of deadly force:

> 1. The first matter you must consider in deciding whether the Commonwealth has met its burden in this regard is what kind of force the defendant used in this instance. There are two kinds, deadly and non-deadly. The Commonwealth claims here that deadly force was used by the defendant and it must beyond a reasonable doubt.
> 2. Deadly force is force that, under the circumstances in which it is used, is readily capable of causing death or serious bodily injury.

The Defense of Others jury instruction features a parallel section. Defendant concludes that these sections illustrate that the legislature intended both deadly and non-deadly to be read to the jury when there was an open issue as to the degree of force used. Because the Defendant was charged with aggravated assault, he asserts the Commonwealth had to prove beyond a reasonable doubt that he caused serious bodily injury, necessitating a deadly force instruction. Defendant

21

concludes that the instruction given likely mislead the jury into believing the Defendant had only a justification defense if his use of force was non-deadly. The Commonwealth acknowledges that Attorney Palermo could have objected to the instruction in question. Certainly, having the jury instructed on deadly force certainly would have informed the jury that the Defendant could have employed either type of force depending on the situation. As such, this Court concludes that the Defendant's claim has arguable merit and satisfies the first prong of *Pierce*.

## B. Reasonable Strategy

Despite satisfying the initial prong, the Defendant fails to show that Attorney Palermo had no reasonable basis for not objecting to the justification instruction. At the PCRA hearing, Attorney Palermo testified that he does not like the word deadly force being used at all during his trials. N.T. PCRA Hearing, 5/4/15, at 87. He further testified that he believed that at most, simple assault occurred in this case and an instruction on deadly-force was unnecessary and could have confused the jury. Specifically, Attorney Palermo stated at the hearing that "if we won on self-defense, it didn't matter what injury was caused." *Id.* at 103. Thus, it is clear that Attorney Palermo's basis for not objecting to the instruction in question was based on his trial strategy that this was a self-defense/defense of others case where no serious bodily injury occurred and the Defendant used non-deadly force to aid himself and his sister. Unfortunately for the Defendant, the jury did not agree.

Additionally, as the Commonwealth highlights in a footnote in its brief, the Defendant was convicted of both simple and aggravated assault. Therefore, if the jury found the Defendant was justified at all, they would have acquitted him on the lesser charge. The Defendant argues that the failure of the Court to instruct on if the Defendant had a duty to retreat or trial counsel's

22

failure to challenge the victim's testimony that he was hit ten times could have caused the jury to find the Defendant guilty of simple assault. The Court finds these contentions unavailing.

Finally, the argument that Attorney Palermo was ineffective for failing to request an instruction about provocation and retreat is also meritless. Whether this instruction was to be given was discussed on the record and Attorney Palermo testified at the hearing he felt the instruction was unnecessary because this was a self-defense/defense of others case to him. Again, Attorney Palermo feared giving such an instruction was unnecessary and could potentially confuse the jury. Attorney Palermo argued throughout the trial that the Defendant came to the aid of his sister and therefore the provocation or retreat of his home instruction was not necessary. Consequently, this Court finds that Attorney Palermo did have a reasonable basis for failing to object to justification, retreat and provocation jury instructions.

## III.    Failure to Object to Flight Instruction.

### A.  Arguable Merit

It is well established in our Commonwealth that a "trial court can use a flight/concealment jury charge when a person commits a crime, knows that he is a suspect, and conceals himself, because such conduct is evidence of consciousness of guilt, which may form the basis, along with other proof, from which guilt may be inferred." *Commonwealth v. Bruce*, 717 A.2d 1033 (Pa. Super. 1988). Defendant alleges that the flight instruction given by Judge Walsh at Petitioner's trial was improper for two reasons. First, Defendant argues that an essential part of the instruction was not given. Additionally, Defendant avers that a flight instruction should not have been given at all because the conduct alleged did not exhibit a consciousness of guilt or intent to evade arrest.

At trial, the following flight instruction was given:

23

> There was also evidence tending to show, and this came from Trooper Shearer, that the defendant hid from police when they tried to serve an arrest warrant on him. The Defendant, of course, maintains that he remained in his apartment because he was sleeping. The credibility, the weight, and the effect of this evidence is for you to decide.
>
> Generally speaking, when a crime has been committed and a person thinks that he is or may be accused of committing it and he flees or conceals himself, such flight or concealment is a circumstance tending to prove that the person is conscious of guilt. Such flight or such concealment does not necessarily show consciousness of guilt in every case.
>
> A person may flee or hide from some other motive and may do so even though he or she is innocent. Whether the evidence of flight or concealment in this case should be looked at as tending to prove guilt, depends on the facts and circumstances of this case and upon the motives that may have prompted the flight or concealment of the defendant.

N.T. Trial, 12/12/12, at 207-208. However, the Pennsylvania Standard Jury Instruction for consciousness of guilt, flight, concludes with the following instruction: "You may not find the defendant guilty **solely on the basis of evidence of flight or concealment**." *See* Pa Suggest Criminal Jury Instructions (Crim.) § 3.14. (emphasis added). Defendant correctly notes that flight alone is insufficient to support a conviction of a crime. *See Commonwealth v. Wilamowski*, 633 A.2d 141 (Pa. 1993).

It is undisputed by the parties, that the flight instruction read at trial was missing the final portion of the standard instruction. The Commonwealth argues that when the instruction is read as a whole it is adequate regardless. The Defendant disagrees and cites a recent non-precedential decision by the Superior Court in support of his argument. We begin by noting that pursuant to Superior Court Internal Operating Procedure Section 65.37 except in circumstances related to law of the case, res judicata, and collateral estoppel, "an unpublished memorandum decision shall not be relied upon or cited by a court or a party in any other action or proceeding." *See* 210

24

Pa. Code § 65.37. However, because the Defendant cites and discusses at length this case on this issue, we find it imperative to at least review this unpublished decision.

In *Commonwealth v. Rivera-Torres*, a panel of the Superior Court reversed a defendant's third degree murder conviction based on an improper flight instruction. *See* 337 MDA 2014 (Pa. Super. December 4, 2014). Specifically, the trial court in *Rivera-Torres* instructed the jury that "you may, however, **find the defendant guilty solely based on the evidence of flight or concealment.**" (emphasis added). The trial court noticeably left out the essential word not. In affirming the trial court's determination that the Defendant was entitled to a new trial, the *Rivera-Torres* panel stated:

> Once the court found that it omitted "not" from the flight instruction, it properly awarded a new trial to Rivera-Torres. **Rivera-Torres clearly had the right to a jury instruction that flight alone could not establish his guilt.** *Wilamowski*, supra. Trial counsel had no reasonable basis for failing to object to an instruction that flight alone could establish his guilt. Finally, the instruction contained fundamental error, since it led the jury to believe that Rivera-Torres' flight after the shooting was itself sufficient to establish his guilt.

*Id.* at 6-7. (emphasis added).

The Commonwealth asserts that this Court should distinguish the instant case from *Rivera-Torres* because the instruction in *Rivera-Torres* was clearly erroneous and prejudicial but that "the facts are nowhere close to what happened here." *See* Comm.'s Brief at 14. Since the decision was announced in December of 2014, no published or non-published decisions have cited to it.

Resolution of this ineffective assistance claim rests on the initial prong of *Pierce* and whether the Defendant's claim has arguable merit. The record is clear that Attorney Palermo was unaware at trial that the instruction was missing the final portion of the standard instruction.

25

Additionally, Attorney Palermo objected at trial to Trooper James Shearer using the word flee but did not object to the flight instruction itself. N.T. Trial, 12/11/11, at 280. Furthermore, there would be no reasonable strategy for not objecting to a jury instruction that would potentially allow the jury to find the Defendant guilty on flight alone.

Turning to the arguable merit prong of *Pierce*, this Court concludes that the instant matter is distinguishable from the Superior Court's non-published decision in *Rivera-Torres*. We are unpersuaded by the Defendant's argument that *Rivera-Torress* illustrates how the Superior Court would view the omission of the final part of the flight instruction at the heart of the instant matter. Unlike the trial judge in *Rivera-Torress*, Judge Walsh did not specifically incorrectly instruct the jury that they could find the Defendant guilty based solely on flight. Rather than an affirmative instruction that the jury could find the Defendant guilty based solely on flight, Judge Walsh simply did not instruct regarding this topic. Ultimately, resolution of this issue comes down to if the affirmative error in *Rivera Torres* and the omission in the instant matter regarding the flight instruction have the same effect. This Court finds that they do not and we agree with the Commonwealth that that the instruction read as a whole is an adequate and accurate statement of the law. Consequently, the Defendant's argument on this issue is without merit.

In addition to this argument on the flight instruction, Defendant also avers that the instruction was erroneous because there was no evidence of flight presented at trial. "The case law on the issue of flight is very clear and it requires the defendant have knowledge that he is wanted in connection with the crime committed." *Commonwealth v. Jones*, 378 A.2d 1245, 1253 (Pa. Super. 1977). "[W]hen a person commits a crime, knows that he is wanted therefor, and flees or conceals himself, such conduct is evidence of consciousness of guilt, and may form the

26

basis [of a conviction] in connection with other proof from which guilt may be inferred."

*Commonwealth v. Clark*, 961 A.2d 80, 92 (Pa. 2008). At trial, Trooper Shearer testified:

> Q: Is it true that you ended up making an arrest of Dustin Bailey?
> A: Yes, that's correct.
> Q: Can you tell us did you go out to his house again on Roxbury Road to make that arrest?
> A: We did.
> Q: Can you tell me about the circumstances of that arrest? What happened when you arrived at the scene?
> A: Upon arrival we walked up the stairs to the residence, knocked on his front door, announced our presence, that we needed to talk to him and he refused to answer the door. However, we could hear him inside the residence. We could hear voices. We could hear him walking around. We could hear objects being moved around. We continued to knock and we continued to not receive an answer.
>
> . . .
>
> A: We weren't going to forcibly enter so we left the premise and set up a perimeter around his residence in an attempt to observe [the defendant] leaving the residence.
> Q: Did he in fact leave the residence shortly after you set up this perimeter?
> A: Yes.
> Q: And what did you see him do?
> A: He got into his vehicle and attempted to flee the area.
> Q: When you say flee, what made you conclude that he was trying to flee?
> A: He obviously knew we were there. He knew we wanted to talk to him.

N.T. Trial, 12/11/12 at 278-280. At this point, Attorney Palermo objected to the word flee being used arguing that there had been no evidence of flight. Judge Walsh sustained the objection and instructed the jury "not [to] consider the word flee. We're going to have a description of what happened but you should not consider the word flee." *Id.* at 280.

Following the objection, Trooper Shearer further testified:

> Q: Can you describe exactly what [the Defendant] did when he came out of his residence and got into his car?

27

A: He exited his residence. I observed him look around to see if he could observe a police presence at which point he entered his vehicle and attempted to quickly leave the area.
Q: How could you tell he was trying to leave?
A: He got in his vehicle and immediately exited the vicinity.
Q: Did he actually put the car – could you see him actually turning the car on?
A: Yeah. He started the vehicle and began to leave the driveway.
Q: And would you say at a high rate of speed?
A: Higher than normal, yes, ma'am.

*Id.* at 280-282. The Defendant argues that trial counsel should have objected to flight instruction being read to the jury at all. Specifically, he points to the fact that trial counsel objected to the word "flee" and that objection was sustained. *Id.* at 280. Further, Defendant highlights that he was not leaving the scene of the crime and that his conduct of leaving the house after the incident and driving down the street "is normal behavior [which] is not indicative of trying to run from the cops." *See* Def.'s Amended PCRA Pet. at 13.

This Court also finds Defendant's second contention regarding the flight instruction to be without merit. In support of his argument, Defendant cites *Clark*, which stated a flight instruction is generally appropriate where a defendant flees the scene of the crime. *See Clark*, 961 A.2d at 92. However, there is no requirement that the Defendant flee the scene of the crime to necessitate a flight instruction and instead the Defendant must only commit a crime, know he is wanted therefor, and attempt to flee or conceal himself to warrant a flight instruction to show consciousness of guilt. The testimony by Trooper Shearer illustrates that the Defendant actually did attempt to flee as well as conceal himself which warranted a flight instruction. Specifically, Trooper Shearer testified that after police set up a perimeter, the Defendant exited the residence and looked around before entering his vehicle. The Defendant then attempted to exit the area at a high rate of speed before he was stopped by police. Such testimony is sufficient to justify an

28

inference that Defendant was attempting to flee from police after they knocked on his door and asked to speak with him.

Additionally, Trooper Shearer testified that he and two additional troopers announced their presence upon arriving at the Defendant's residence, the location where the alleged crime occurred, and instructed the Defendant they needed to talk to him. Further, according to the testimony of Trooper Shearer, the Defendant failed to open the door despite the fact troopers could hear voices and the Defendant walking and moving objects around in the residence. Therefore, it is not reasonable to conclude that the Defendant did not know he was wanted by police regarding the incident that occurred in his residence just a few nights prior. The record is clear that a flight instruction was warranted and proper in this case. As such, the Defendant's argument is without merit. It should be noted that the flight instruction in this case emphasized that it would be up to the jury to determine if it believed Trooper Shearer's testimony that the Defendant hid from police or to believe the Defendant's testimony that he was merely sleeping in his apartment. This credibility determination was for the jury to make and was clearly covered by the instruction.

## IV.    Failure to Obtain Steroid Expert

### A. Arguable Merit

In his fourth issue, the Defendant raises multiple ineffective assistance of counsel claims. First, Defendant asserts that Attorney Palermo was ineffective for failing to secure a steroid expert for trial. Second, he asserts Attorney Palermo was ineffective for failing to keep the steroid evidence out via a pretrial motion supported by an expert opinion. Prior to trial, Attorney Palermo filed a Motion in Limine requesting that the Court exclude any evidence regarding the Defendant's steroid use. Ultimately, Judge Walsh allowed the Commonwealth to introduce

29

steroid evidence to establish motive but not to "blacken the character of the Defendant." *See* Order, 5/4/2012. At trial, Dr. Pierre Turchi's testified for the Commonwealth. Specifically, on direct, Dr. Turchi testified to the following regarding steroid use:

> Q: Finally, Dr. Turchi, and this is an all together [sic] different subject. I'd like to talk to you a little bit, very briefly, about steroid use. Have you had the opportunity to receive any training or read any literature about steroid use?
> A: Yes.
> Q: And would it be fair to say that use of steroids can cause a person to become more aggressive than they normally are?
> A: Most definitely, yes.
> Q: If hypothetically speaking, if someone took steroids and then had alcohol on top of that, would that change the aggression in any way?
> A: It would make it far worse because alcohol removes the inhibition. We are less shy when we drink a little bit, so if you add steroids then alcohol that is a bad combination.
> Q: In all fairness, sir, to your knowledge, you've never treated Dustin Bailey as patient; correct?
> . . .
> A: Yes, Oh, I'm sorry, excuse me. Yes, correct.

N.T. Trial, 12/11/12, at 237-238. **These four questions represent the entirety of Dr. Turchi's direct testimony concerning steroids.** (emphasis added). On cross-examination, Dr. Turchi admitted that the last time he attended a seminar or read some publication about steroids was five or six years ago. *Id.* at 239. Dr. Turchi also confirmed that he had not examined any blood from the Defendant and that numerous factors could be combined with alcohol which could lead to a "bad result." *Id.* at 240.

The Defendant alleges that Attorney Palermo should have utilized an expert to combat the steroid testimony of Dr. Turchi. Specifically, Defendant asserts that an expert, such as Dr. Harrison Pope, M.D., could have testified at trial to show that there was wholly insufficient evidence to conclude the Defendant's motive in this crime was steroid use. Dr. Pope's

30

credentials, as provided in his C.V., are certainly impressive. *See* Def.'s Amended PCRA Pet., at Appendix C. Furthermore, there is little doubt that compared to Dr. Turchi, the victim's family physician, Dr. Pope possess significantly more knowledge and experience regarding steroid use in general and particularly use of anabolic-androgenic steroids. ("AAS").

When raising an ineffective assistance of counsel claim for failure to call a potential witness, the Pennsylvania Supreme Court has held that a PCRA petitioner satisfies the performance and prejudice requirements of *Pierce* by showing:

> "(1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial."

*Commonwealth v. Johnson*, 966 A.2d. 523, 536 (Pa. 2009). In the instant matter, the parties stipulated that defense expert Dr. Pope existed, was available to testify, and that trial counsel knew or should have known about his identity. Thus, to satisfy the first and third prongs of *Pierce* the Defendant must show that the absence of Dr. Pope's testimony was so prejudicial that it deprived the defendant of a fair trial. In addressing the merit prong first, this Court finds that Attorney Palermo could have chosen an expert such as Dr. Pope to effectively contradict the steroid testimony of Dr. Turchi. Thus, the first prong of *Pierce* has been satisfied.

### B. Reasonable Strategy

The Commonwealth does not appear to dispute the initial prong *Pierce* on this issue. Rather, the Commonwealth's argument stresses that Attorney Palermo had a reasonable strategy when he decided not to a call an expert witnesses of his own to refute any testimony by Dr. Turchi concerning steroids. This Court agrees. At trial, it is clear that Attorney Palermo's strategy was to impeach Dr. Turchi regarding his lack of knowledge on the subject of steroid use.

31

When asked at the PCRA hearing about his knowledge of the anticipated nature of Dr. Turchi's testimony and his trial strategy in response, Attorney Palermo testified:

> I took it as he was a family doctor coming in to testify to the victim's injuries. I understood him to be the treating physician. And he was--I think he had reviewed documents or something about steroid use.
>
> **But our trial plan was basically impeachment which I think we tried to do at trial, if I recall correctly, on his lack of knowledge about the subject matter. And basically spatially it had been some years since he looked at anything about this topic.**

N.T. PCRA Hearing, 5/4/15, at 68. (emphasis added).

As correctly highlighted by the Commonwealth, our High Court has held that it is an apodictic rule that counsel is not ineffective merely because he or she does not a call medical or forensic specialist to present testimony which would critically evaluate the expert testimony presented by the prosecution. *See Cox*, 983 A.2d at 691. Rather than calling an expert or forensic specialist in some circumstances, trial counsel may seek to cross-examine a prosecution's witness to elicit helpful testimony. *See Commonwealth v. Smith*, 675 A.2d 1221 (Pa. 1996) (counsel not ineffective for failing to call expert witness and instead "cross-examining all of the Commonwealth's expert witnesses in an attempt to establish an accidental death theory and to **explore the soundness of the prosecution's theory.**"(emphasis added)). The Commonwealth also cites *Commonwealth v. Copenhefer*, 719 A.2d 242, 253 (Pa. 1998), and *Commonwealth v. Yarris*, 549 A.2d 513, 529 (Pa. 1988), in support of this proposition.

In response to the various case law put forth by the Commonwealth, the Defendant avers that none of these cases are relevant to the instant matter. Instead, Defendant believes his case "presents an exceptional situation where the Commonwealth presented scientific testimony via a non-expert that was scientifically inaccurate." Def.'s Brief at 16. Defendant continues by

32

alleging that cross-examination has the limited purpose of being used to impeach. Despite this contention, in some circumstances cross-examination may also be used to elicit helpful testimony from a witness of the opposing party. Further, for reasons that will be described in detail below, this Court does not find the Defendant's case is one which presents the exceptional situation the Defendant alleges. Defendant's contention that Attorney Palermo failing to challenge inaccurate testimony with an expert was clear error and not a strategy is wholly without merit. Attorney Palermo clearly had a trial strategy and that was to cross-examine Dr. Turchi with his lack of knowledge about the subject of steroid use.

Next, this Court must determine if the Attorney Palermo's decision to cross-examine Dr. Turchi instead of calling an expert witness of his own such as Dr. Pope **was reasonable**. (emphasis added). This Court finds that Attorney Palermo's cross-examination in this case was reasonable and was in fact effective regardless of the jury's verdict. Counsel's chosen strategy will not be found to have lacked a reasonable basis, as the second prong of the test for ineffective assistance of counsel, unless it is proven that an alternative not chosen offered a potential for success substantially greater than the course actually pursued. *See Commonwealth v. Williams*, 899 A.2d 1060 (Pa. 2006). Trial counsel's strategy is not measured through hindsight against alternatives not pursued, so long as trial counsel had a reasonable basis for the decision made. *Id.*

Attorney Palermo's reasoning for deciding to cross-examine Dr. Turchi was that he believed that Dr. Turchi's knowledge on steroids was borderline ridiculous and embarrassing. Specifically, when asked at the PCRA hearing why he chose this approach instead of calling an expert, Attorney Palermo testified:

> [Attorney Palermo]: My reason was factual. And this case was in
> my opinion very weak for the Commonwealth. It was kind of

33

thrown together at the last minute, this whole steroid thing. In fact, I think it seemed like the first time I heard this actual allegation was in response to my motion so that at this time, there had been-- now we're a couple days before trial at this point.

There had been no allegation that he was under the influence of steroids. I had knowledge from discovery that his blood wasn't tested. So we were just going to wait for this expert to come to trial and impeach him on the stand, which I believe we did or tried to do.

N.T. PCRA Hearing, 5/4/15, at 71. Further, on cross-examination, Attorney Palermo testified:

Q: And is it fair to say that when it came to the steroid use, your strategy during trial was to focus on the cross examination of Dr. Turchi because you felt he was not credible or lacked knowledge on the subject?

A: **Yeah. I think it teetered on embarrassing, his testimony about his knowledge.**

[The Court] Q: I'm sorry. What?

A: **Teeters on embarrassing almost his knowledge of steroids.** I think--again I'm trying to remember. But it was--he hadn't read anything on it in five to six years or something like that.

. . .

Q: So once again, what was exactly your strategy with regard to dealing with the steroid issue?

A: That we weren't going to make a big deal out of it. I thought it was reaching on your office's part to try to tie in the steroids to this case. **I thought we had a more believable scenario,** this gentleman had attacked Mr. Bailey's sister and he went to her aid. That's coupled with the knowledge that this Megan Millhouse saying that you meet a guy that night, he says, Hey, you want to see my steroid kit?

**It didn't pass the smell test. It was incredible testimony.**

*Id.* at 96, 99. (emphasis added). This testimony by Attorney Palermo is consistent with

34

statements he made during his closing argument at trial. *See* N.T. Trial, 12/12/12, at 145-146. All of these statements by Attorney Palermo make it indisputable that his reasoning for choosing to cross-examine Dr. Turchi was because of the lack of knowledge he had on the topic of steroids and the belief that the steroid testimony linking the Defendant was unbelievable. His chosen trial strategy was clearly reasonable given these facts. The record supports that Attorney Palermo had a reasonable basis for deciding to cross-examine Dr. Turchi rather than to call an expert to highlight the steroid issue further.

Finally, this Court would note that Attorney Palermo executed his trial strategy by extensively cross-examining Dr. Turchi about his lack of knowledge regarding steroid use in general and as well as specifically related to the Defendant. In reviewing the trial transcript, Attorney Palermo's cross-examination of Dr. Turchi appears quite effective. Unfortunately for the Defendant, the jury was unpersuaded, but as pointed out by the Commonwealth, that fact is irrelevant. *See Commonwealth v. Colavita*, 993 A.2d 874, 895 (Pa. 2010). Because this Court finds Attorney Palermo had a reasonable basis for the trial strategy he employed on this issue, we decline to address the final prong of *Pierce*. Further, because we find Attorney Palermo's decision and actions to be reasonable we also reject Defendant's additional argument that Attorney Palermo was ineffective for failing to keep the steroid evidence out via a pretrial motion supported by an expert opinion.

## V.     Failure to Object to Dr. Turchi Testifying as an Expert Witness

As the three prongs of *Pierce* are much more interwoven on Defendant's fifth issue the Court will address them simultaneously. At the outset, Defendant correctly notes that Attorney Palermo stated at the PCRA hearing that Dr. Turchi "was never formally identified as an expert witness." N.T. PCRA Hearing, 5/4/15, at 69. Defendant extrapolates this into contending that

35

Attorney Palermo was ineffective for failing to object to Dr. Turchi's testimony regarding steroids because such testimony was inadmissible because Dr. Turchi was not qualified as an expert and lacked the expertise to even be qualified. *See* Def.'s Amended PCRA Petition at 15-16. Similar to the Defendant's fourth issue, the Commonwealth highlights that it is reasonable for trial counsel to seek to impeach a witness's credibility through cross-examination as opposed to objecting to the witness's testimony. *See Commonwealth v. Robinson*, 682 A.2d 831, 835 (Pa. Super. 1996). In response, the Defendant attempts to distinguish *Robinson* because the evidence in that case was relevant and admissible. *Id.* at 835. In contrast, Defendant asserts that Dr. Turchi's testimony about steroids was inadmissible because he was not an expert in that field and that his opinion is outside the knowledge of a lay person without using a methodology generally accepted in the relevant field. Thus, according to the Defendant, the testimony of Dr. Turchi regarding steroids violated the Pennsylvania Rule of Evidence. *See* Pa.R.E. 702.[10]

Although the Defendant is correct Dr. Turchi was not formally qualified as an expert, he was asked questions regarding his career and credentials at trial. *See* N.T. Trial, 12/11/12, at 221. At the outset of his direct examination Dr. Turchi testified that he worked at Mercersburg Family Care as a physician in the family care practice program. *Id.* Additionally, he testified he had been working at the practice since January of 2011 and began practicing as a doctor in general in 1983. *Id.* Both the Defendant's Amended PCRA Petition and his Brief following the PCRA hearing appear to allege that the Commonwealth presented Dr. Turchi's testimony about steroids

---

[10] Pa. R.E. 702, Testimony by Expert Witnesses states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge is beyond that possessed by the average lay person;
> (b) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; and
> (c) the expert's methodology is generally accepted in the relevant field.

36

as evidence that the Defendant committed an isolated, non-triggered act of violence to explain motive. The Defendant's expert, Dr. Pope, explains that AAS cannot, without some other triggering factor, motivate violent behavior. *See* Def.'s Amended PCRA Pet. at 14, Appendix B at 3.

However, at no point did Dr. Turchi testify that use of steroids could do this. A thorough review of Dr. Turchi direct testimony reveals that he answered precisely four questions regarding steroids. *See* N.T. Trial, 12/11/12, at 221-222. The first question Dr. Turchi was asked was if he had read any literature or received any training about steroids, to which he stated he had. *Id.* at 237. Dr. Turchi was effectively cross-examined on this answer by Attorney Palermo as he was forced to admit that he had not reviewed any literature or received any training on steroids in over "five or six years." *Id.* at 239-240. Second, Dr. Turchi was asked "would it be fair to say that use of steroids **can** cause a person to become more aggressive than they normally are?" to which he answered "most definitely yes." *Id.* at 237. Notably, the question includes the word can. Undoubtedly, a plethora of different substances, situations, or factors can cause a person to become more aggressive than they normally are. As a doctor, Dr. Turchi was certainly qualified to opine on many of these factors. *Id.* at 239. Attorney Palermo again effectively cross-examined Dr. Turchi by eliciting an opinion by Dr. Turchi that many things, besides steroids, can "cause a bad result." *Id.* Despite the Defendant's classification otherwise, Dr. Turchi **did not testify that steroids, without other triggering factors, could motive violent behavior.** (emphasis added). Rather, Dr. Turchi opined that steroids were one factor that could cause a person to become more aggressive. Such an opinion is not "inaccurate testimony." Defendant highlights that Dr. Pope states that AAS cannot be cited as a stand-alone explanation for a violent acts, that lay people have an improper idea about the term "roid rage," and that individuals using AAS do not erupt

37

into violence spontaneously like someone having a heart attack or a seizure. *See* Def.'s Amended PCRA Pet. at 15, Appendix B at 3. Again, this is was not the testimony of Dr. Turchi, who simply stated steroids could cause a person to be more aggressive than they normally are.

In his third answer regarding steroids on direct examination, which was a hypothetical, Dr. Turchi opined that if you combined steroids and alcohol together that would be "a bad combination." *See* N.T. Trial, 12/11/12, at 237-238. Once again, the Defendant's characterization that this testimony supports an assertion by Dr. Turchi that AAS causes random, spontaneous violence is misleading and inaccurate. One could argue that combining just about anything with alcohol, especially something such as steroids, is a "bad combination." Finally, in her fourth question on direct, Attorney Sulcove asked a question that actually strengthened the Defendant's case, essentially seeking confirmation that Dr. Turchi had never had the Defendant as a patient or reviewed any of his blood work. *Id.* at 238. Consequently, even if the Defendant could prove arguable merit and that Attorney Palermo had no reasonable basis for not objecting to Dr. Turchi testimony regarding, the Defendant fails to prove he was prejudiced from this minimal amount and general testimony on steroids. As such, Defendant's argument on this issue is without merit.

## VI. Failure to Obtain a Stenographer for the Preliminary Hearing

### A. Arguable Merit

In his sixth issue, Defendant argues that his preliminary hearing counsel, Attorney Christopher Reibsome, provided ineffective assistance of counsel because he failed to obtain a stenographer at the Defendant's preliminary hearing. Defendant argument stems from notes taken at the preliminary hearing by Attorney Reibsome and Attorney Clint Barkdoll who represented his sister and co-defendant, Billy Jo Bailey. Specifically, Defendant highlights a discrepancy between the victim's testimony at the preliminary hearing and trial regarding the

38

number of times he alleges he was struck in the head by the Defendant. At the PCRA hearing, both Attorney Reibsome and Attorney Barkdoll testified that their notes from the preliminary indicate that the victim testified that he was hit two or three times in the face with a closed face. N.T. PCRA Hearing, 5/4/15, at 18-20, 27. At trial, the victim testified:

> Q: Do you have an approximate number of times he hit you in the head?
> A: No. A lot.
> Q: More than three times?
> A: Yes.
> Q: More than five times?
> A: Yes.
> Q: More than ten?
> A: Probably, yes.

N.T. Trial, 12/11/12, at 78.

Defendant asserts that this discrepancy in testimony shows that the victim intentionally changed his story at trial and provided false testimony. However, because there was no preliminary hearing transcript, Defendant concludes that the victim could not be impeached at trial with these prior inconsistent statements. Consequently, Defendant argues that Attorney Reibsome was ineffective for failing to obtain a stenographer at the preliminary hearing to ensure obtaining a transcript of the procedure would be possible.

The Commonwealth asserts that there is no constitutional right to a preliminary hearing at either the federal or in Pennsylvania. *See Coleman v. Alabama*, 399 U.S. 1 (1970); *Commonwealth v. Ruza*, 511 A.2d 808, 810 (Pa. 1986). In Pennsylvania, guidance on preliminary hearings is drawn from Pennsylvania Rule of Criminal Procedure 542. Specifically, Pa. R. Crim. P. 542(C) states that:

> (C) The defendant shall be present at any preliminary hearing except as provided in these rules, and **may**:
>
> (1) be represented by counsel;

> (2) cross-examine witnesses and inspect physical evidence offered
> against the defendant;
> (3) call witnesses on the defendant's behalf, other than witnesses to
> the defendant's good reputation only;
> (4) offer evidence on the defendant's own behalf, and testify; and
> **(5) make written notes of the proceedings, or have counsel do
> so, or make a stenographic, mechanical, or electronic record of
> the proceedings.**

(emphasis added). Finally, the Commonwealth notes that "any deficiencies in procedures at the preliminary hearing are cured by trial where a criminal defendant is found guilty beyond a reasonable doubt." Comm.'s Brief at 18 citing *Ruza*, 511 A.2d at 810.

After careful consideration, this Court agrees with the Commonwealth. Nowhere in Rule 542 is an affirmative requirement that defense counsel "obtain a stenographic record" of the proceeding. To the contrary, defense counsel is empowered with choosing between a variety of options including making written notes or having a stenographic or electronical of the proceedings made. In the instant matter, Attorney Reibsome apparently decided against requesting a stenographic record of the proceedings and instead chose to take his own notes. Notably, Attorney Barkdoll also did not request a stenographer for the preliminary hearing while he was representing Billy Jo. At the PCRA hearing, Attorney Barkdoll confirmed that it was often the case that a stenographer may not be available to transcribe every preliminary hearing. *See* N.T. PCRA Hearing, 5/4/15, at 21.

Defendant contends that he has a right under Pa. Crim.R.P. 542(C)(5) to a stenographic record of his preliminary hearing. Defendant contends that he requested that Attorney Reibsome retain a stenographer but he refused and instead simply took handwritten notes. At the PCRA hearing, Attorney Reibsome directly contradicted this hollow allegation testifying:

40

Q: It's also possible I believe you said that you may have actually wanted a stenographer but there wasn't one available. Is that a possibility?

A There's that possibility. I don't recall whether one is available. I know I didn't file for one. But I don't know.

Q If the Defendant had requested that a stenographer be present for the preliminary hearing, **would you have ignored that request?**

**A: No. I would have at least filed something.**

*Id.* at 37. (emphasis added). In contrast, Defendant presented absolutely no evidence at the

PCRA supporting this baseless allegation contained within his Amended PCRA Petition.

Defendant also fails to present any Pennsylvania case law which has ever found that an attorney

was ineffective for taking handwritten notes rather than obtaining a stenographer and a transcript

of a preliminary hearing. Quite simply, Attorney Reibsome was under no affirmative duty to

request a stenographic record of the preliminary hearing and the Defendant presented no

evidence at the hearing to show that he requested one. Thus, we find the Defendant's argument

on this issue lacks arguable merit and fails the first prong of *Pierce.*

## VII.    Failure to Obtain Prior Counsel's Notes from Preliminary Hearing

### A.  Arguable Merit

Next, Defendant contends that Attorney Palermo was ineffective because he failed to

request and use the notes Attorney Reibsome made at the preliminary hearing at trial. At the

PCRA hearing, Attorney Palermo testified that although he did not ask Attorney Reibsome for

his preliminary hearing notes after taking over the case, he did have an outline of them which he

used at trial. *See* N.T. PCRA Hearing, 5/4/15, at 92. Similar to the previous issue, Defendant

argues Attorney Reibsome's notes state the victim testified at the preliminary hearing that he was

hit two or three times. He also highlights that Ms. Millhouse testified at the preliminary hearing

41

that she had "no drinks" while at the Defendant's house.[11] Defendant concludes by asserting that if trial counsel had used the notes of Attorney Reibsome he would have been able to impeach these witnesses when they testified differently at trial.

Interestingly, Attorney Palermo was not asked to extrapolate at the hearing on what his outline contained or from where it was obtained. When directly asked by defense counsel at the PCRA hearing if he knew the testimony at the preliminary hearing, Attorney Palermo stated that he had an outline of it. His affirmative answer suggests he was well aware of the preliminary hearing testimony. This Court finds that Attorney Palermo's use of an outline of the preliminary hearing notes was sufficient in this matter and the Defendant's claim lacks arguable merit. This is strengthened by possible issues regarding the deciphering of Attorney Reibsome's notes. When Attorney Reibsome was asked if the notes were his handwriting he answered "[y]eah it looks bad enough. So yeah." N.T. PCRA hearing, 5/4/15 at 26. Given Attorney Reibsome's own admission about the quality of his handwriting, Attorney Palermo may have reasonably decided an outline of the notes was superior for purposes of trial. Finally, this Court also does not believe Defendant could satisfy the prejudice prong on this issue.

## VIII. Failure to Object to the Prosecutor's Closing Argument

### A. Arguable Merit

In his eighth issue, Defendant contends that Attorney Palermo was ineffective for failing to object to statements made by Attorney Sulcove in her closing argument. Defendant alleges that an objection was necessary because Attorney Sulcove "improperly bolstered her own witness's testimony by offering broad opinions about their credibility." Def.'s Amended PCRA Pet. at 29. Furthermore, the Defendant alleges that Attorney Sulcove improperly opined about

---

[11] On cross-examination by Attorney Barkdoll, Ms. Millhouse testified that she had maybe had one or two drinks at the Defendant's house. N.T. Trial, 12/11/12, at 169. Thus, even if this Court were to find that the Defendant could satisfy the first two prongs of *Pierce*, Defendant would wholly fail to show prejudice on this point.

the Defendant and codefendant's testimony and credibility. *Id.* Specifically, Defendant emphasizes that Attorney Sulcove told the jury that Billy Jo's testimony[12] was "highly incredible" and that "you should toss out everything she said based on that, ladies and gentlemen." N.T. Trial, 12/12/12, at 184. Additionally, Defendant takes issue with other remarks by Attorney Sulcove where she stated that the victim and Ms. Millhouse were not lying in this case but instead the Defendants were. *Id.* at 192. Finally, Defendant argues that Attorney Sulcove's characterization of his testimony that contradicted that of Trooper Shearer's testimony as "malignant garbage" was improper. *Id.* at 178-179.

The Pennsylvania Supreme Court has made it clear that "a prosecutor may not offer his personal opinion as to the guilt of the accused either in argument or in testimony from the witness stand. Nor may he or she express a personal belief and opinion as to the truth or falsity of evidence of defendant's guilt, including the credibility of a witness." *Commonwealth v. D'Amato*, 526 A.2d 300, 309 (Pa. 1987) (internal citations omitted). Defendant cites three cases in support of his argument that Attorney Sulcove's statements were improper in this matter and that Attorney Palermo should have lodged an objection. The first case is *Commonwealth v. Potter*, 285 A.2d 492 (Pa. 1971). In *Potter*, the defendant was convicted of first degree murder and robbery. *Id.* On appeal, the defendant argued that he was entitled to a mistrial based on a prejudicial statement made by the prosecutor during cross-examination. *Id.* On cross-examination, the prosecutor asked the Defendant why he had not told his public defender about marks on his face alleged to have been the result of being beaten up by police. *Id.* The following exchange then occurred:

Q: Yes, why not?
A: He wasn't concerned about any marks on my face.
Q: I suggest to you, Mr. Potter,

---

[12] Billy Jo's testimony supported the Defendant's theory of self-defense/defense of others.

43

A: You suggest to me what?
Q: I suggest to you that the reason that you didn't say anything about it is because what you have said about being beaten by the police is a malicious lie like all the rest of your testimony.
A: No it is not.

*Id.* Trial counsel for the defendant then objected. *Id.* In reversing a denial of a mistrial by the trial court, the Pennsylvania Supreme Court stated that the prosecutor by branding the defendant's testimony as a malicious lie "exceeded the permissible bounds of cross-examination." *Potter*, 285 A.2d at 493. Further, the *Potter* Court found that such statements resulted in the highly prejudicial opinion of the defendant's credibility by the prosecutor which impeded on the jury's exclusive function of assessing the credibility of a witness. *Id.* Consequently, our High Court vacated and granted a new trial.

In *Commonwealth v. Kuebler*, 399 A.2d 116 (Pa. Super. 1979), the defendant was convicted of murder, aggravated assault and recklessly endangering another. In his closing argument, the prosecutor made the following statement:

> I submit to you, members of the Jury, that the defendant is not right, and everything that she said from that stand, and in every major respect concerning this case was a big lie."

*Id.* at 117. Finding that the defendant's credibility was critical to asserting a proper defense, the *Kuebler* Court found that the characterization of her testimony by the prosecutor as a "big lie" was highly prejudicial and warranted a new trial. *Id.* at 119.

Finally, the Defendant cites *Commonwealth v. Grosso*, 418 A.2d 452 (Pa. Super. 1980), in support of his argument on this issue. The defendant in *Grosso* was convicted of various crimes, including rape. *Id.* In the prosecutor's closing argument he stated a written statement may be the defendant and the motive counsel for the defendant offered was "sheer fantasy." *Id.* at 453. The *Grosso* Court found that this statement clearly communicated the

44

prosecutor's personal opinion of the defendant's testimony and was so prejudicial it necessitated the granting of a new trial. *Id.* at 454.

As the Defendant properly recognizes in other issues raised in this PCRA Petition, the credibility of the various witnesses in this case was crucial. Thus, during his closing at trial, Attorney Palermo made various statements attacking and questioning the veracity of the testimony of the Commonwealth's key witnesses. Attorney Palermo stated the following regarding the testimony of Ms. Millhouse:

> I want to talk about Ms. Millhouse who's joined us. It's a phenomenon, and I don't have a name for it when I'm in court, but whenever I watch the Commonwealth talk to their witnesse [sic], it kind of has a natural flow to it. They kind of, you know, before the question's out the answer's coming back.
>
> But when I ask one of their witnesses' questions, it's like pulling teeth. I mean, you want to fight with me? You're the victim. You're of clear conscience. You're the victim. You were victimized. **The Commonwealth of Pennsylvania's standing by your side holding your hand** you're going to fight with me over the word flirting versus being friendly? We're going to have a fight over that? We're going to be disrespectful to each other because I'm saying flirting and you're saying friendly?
>
> . . .
>
> **They had to show up today and they had to show up yesterday and they got to maintain that story, but the problem happened when they didn't stick to the story.** Clear open-ended questions what happened next.

N.T. Trial,12/12/12, at 142-143. (emphasis added). Next, Attorney Palermo further attacked the credibility of the victim and Ms. Millhouse by stating:

> **Remember this, to believe their story**; this is an unprovoked attack, completely unprovoked. You're all drinking, having a good time and then it's kind of like, well, maybe wrestle mania breaks out and Dustin wants to wrestle everybody, and then he just goes in the bathroom and clears house.

45

> **That's what you got to believe. They want to believe that's a**
> **reasonable story and you're entitled to.** I'm not going to tell you
> what to think. You have the evidence or lack thereof.

*Id.* at 146-147. (emphasis added). Attorney Palermo continued his scathing closing, as it was

later described at sidebar by the Judge Walsh, by questioning the veracity of the testimony of

Trooper Shearer commenting:

> Today you got to see Trooper Shearer in his suit on the witness
> stand, very polite. Yes, sir; no, sir. He has a tough job . . . I'm sure
> it's a stressful job.
>
> But remember, the guy you see in court testifying, he didn't come
> to my client's door in a suit and those stories are very divergent.
> You either knock on the door and had a nice conversation at the
> front door with my client or you woke him up a flashlight in bed.
> That's two different stores. Unfortunately you have to parse out
> which one is true. Woken up with a flashlight and my client wasn't
> too happy. Yeah, I understand.
> **You have to believe from the trooper it was the most polite**
> **conversation he ever had.** It was a Sunday service conversation
> about, well, what did he do, Dustin? Tell me the whole story.
>
> . . .
>
> When Trooper Shearer took the stand initially and Ms. Sulcove
> asked him, well, what did Dustin Bailey say to you, he gave a
> rendition of events that was very similar to what he testified to
> today, that he was in the bathroom with my sister and we got into a
> fight. That was his version way back then.
>
> **But when you put blinders on and don't care and when you**
> **decide early on who the victim is, who has the worse black eye,**
> **that's okay? They're in control.**

*Id.* at 147-148. (emphasis added).

Finally, Attorney Palermo attempted to bolster the credibility of the testimony of the

Defendant stating:

> **Let's talk about credibility.** [The Defendant] came in and told
> you [that he had pled guilty in prior cases] on the witness stand.
> When he talked to Ms. Sulcove, it wasn't that much of a flow to

the conversation, angst in his voice. But, again, this is a man that's been under this for 18 months who had to sit next to me calm, but he hears nobody mention that for 18 months, but it's been filed in a police report, on two police reports, by the way, in different contexts for 18 months. So I understand his angst. I understand his anger and probably rage.

. . .

**You have to weigh credibility. I'm welcoming you to weigh my client's credibility. He did what he did and took up for it. He pled guilty to it. Weigh [the victims'] credibility when they took that stand and raised their hand in oath.**

*Id.* at 145-147. (emphasis added). It is quite clear that on multiple occasions Attorney Palermo attacked the credibility of all three of the Commonwealth's key witnesses. Furthermore, he also commented and bolstered the credibility of the Defendant.

The Commonwealth also cites various case law in support of its contention that "when the prosecutor's entire closing is read in context with the defense attorneys' closing remarks, as well as all of the testimony and other evidence presented at trial, it is clear that the prosecutor was not expressing her own personal beliefs about the witnesses' credibility, but rather, was appropriately responding to credibility comments made by defense counsel." Comm.'s Brief in Support at 20. In *Commonwealth v. Barren*, 462 A.2d 233 (Pa. 1983), the defendant claimed that the prosecutor committed reversible error in his closing when he stated "[The victim] got up [on the witness stand], she had to go through this ordeal because she wanted to bring you the truth, what actually happened." *Id.* at 235. The *Barren* Court held such comments were not reversible error because they were motivated prior attacks upon the credibility of the Commonwealth's witness. Specifically, our High Court stated:

In his closing statement, defense counsel described the victim's testimony as the product of rote memorization which she had repeatedly rehearsed with her mother in preparation for trial. **The prosecutor would have been remiss in his duties had he failed**

47

> **to counter this attack with an attempt to support the victim's credibility before the jury.** His remarks during summation were a reasonable attempt to comply with this duty and thus are properly categorized as constituting fair response.

*Id.* (emphasis added).

Pursuant to *Barren*, it clear that Attorney Sulcove's comments that the Defendant contends "improperly bolstered" the credibility of the Commonwealth's witnesses were quite proper. Attorney Palermo attacked the credibility of the Commonwealth's key witnesses vigorously on multiple occasions during his closing argument. *See* N.T. Trial, 12/12/12, at 142-148. Consequently, Attorney Sulcove would have been "remiss in her duties" had she not attempted to fend off this attack with statements in her closing supporting her witnesses' credibility before the jury. *Barren*, 462 A.2d at 235.

Furthermore, the case law cited by the Commonwealth illustrates that its statements questioning the credibility of the Defendant and Billy Jo were proper. In *Commonwealth v. Stolzfus*, 337 A.2d 873, 882 (Pa. 1975), defense counsel in his closing argument categorized the testimony of the Commonwealth's witnesses as "ridiculous" and stated "they are trying to insult your intelligence" and that one Commonwealth witness was clearly lying and "ha[d] absolutely no concept as to the meaning of an oath." In response, the prosecutor made various comments in her closing regarding the credibility of the defendant's story at trial. *Id.* The *Stolzfus* Court held that "it is apparent that the district attorney's attack upon the credibility of [the defendant] was motivated by and was commensurate with, the prior attacks upon the credibility of [the Commonwealth's witnesses]. **That being the case, the complaint now made as to the district attorney's summation has little merit.**" *Id.* (emphasis added). Perhaps most telling on this issue is *Commonwealth v. Johnson*, 588 A.2d 1303 (Pa. 1991), where the Pennsylvania Supreme Court stated:

48

> While the prosecutor did state during his closing argument that appellant had lied, **when taken in context and after review of all of the evidence, it becomes clear that his remarks were neither unfair nor prejudicial. Clearly, the outcome in the case involved a credibility determination by the jury.**
>
> . . .
>
> **Moreover, it was the defendant's counsel who first commented on the credibility of witnesses.** Indeed, defense counsel quite clearly indicated his belief that one of the prosecution witnesses was in fact lying. . . Given these circumstances, **it would be difficult to conceive of any other approach when closing to the jury employed by the prosecutor here.** Viewed in this context, the prosecutor's comments were neither unfair nor prejudicial, but, merely reinforced the fact the jury had been presented conflicting stories.

*Id.* at 307. (emphasis added). *Stolzfus* and *Johnson* strongly support the Commonwealth's contention that the prosecutor's statements regarding the credibility of the Defendant were proper in light of credibility attacks levied by Attorney Palermo during his closing argument.

Further, the cases cited by the Defendant are easily distinguishable from the instant matter. First, *Potter* dealt with statements made by the prosecutor on cross-examination. This is clearly not analogous to making such statements during a closing argument as is alleged in the case at bar. Additionally, there was no language in either *Kuebler* or *Grosso* which indicated that defense counsel in those cases had originally attacked the credibility of the Commonwealth's witnesses or attempted to bolster that of their own. Consequently, this Court finds the case law cited by the Commonwealth to be analogous and the case law cited by the Defendant to be clearly distinguishable. As the Defendant's argument on this issue has no arguable merit additional analysis under the final two prongs of *Pierce* is unnecessary.

## IX.  Failure to Advise Client of Crimen Falsi Implications

### A.  Arguable Merit

In Defendant's ninth issue, he argues that Attorney Palermo was ineffective because he did not discuss with him that some of his prior convictions would be admissible evidence if he testified at trial. Defendant alleges that on the advice of Attorney Palermo he took the stand and on direct examination his prior convictions in 2003 for theft and conspiracy to commit robbery came out. Defendant contends that Attorney Palermo's advice did not permit him to make a knowing and intelligent decision to testify because he was unaware that his prior convictions would be admitted. Thus, Defendant concludes Attorney Palermo rendered ineffective assistance of counsel.

As correctly pointed out by the Commonwealth, the Defendant provided absolutely no evidence at the PCRA hearing to support the aforementioned allegations on this issue. Similar to contentions made against Attorney Reibsome in his sixth issue, Defendant's simply makes a blanket, baseless and unsupported allegation. This allegation is also contradicted by testimony of Attorney Palermo. At the PCRA hearing when asked how certain he was that he spoke with the Defendant about the possibility that his *crimen falsi* convictions could come up on cross examination, Attorney Palermo testified "95 percent. In my practice, it's more likely than not my clients are going to have *crimen falsi* especially with my court-appointed clients generally." N.T. PCRA Hearing, 5/4/15, at 103-104.

Perhaps even more telling is that it was Attorney Palermo on direct, rather than the Commonwealth on cross-examination, who brought out this *crimen falsi* evidence when the Defendant testified. Specifically, Attorney Palermo asked the Defendant the following on direct examination:

50

Q: I want to back up. This isn't your first time in a court, is it?
A: No, sir.
Q: You've been in court for other convictions. You have other convictions; right?
A: Yes, sir.
Q: You have a conviction in 2003?
A: Yes, sir.
Q: For a theft charge?
A: Yep.
Q: And a 2003 conviction for conspiracy to commit robbery?
A: Yes, sir.
Q: Were you convicted by a jury or did you plead guilty to those?
A: I plead guilty
Q: Why did you plead guilty?
A: Because I was guilty. I was guilty of that.

N.T. Trial, 12/12/12, at 21-22. Thus, it seems inconceivable that Attorney Palermo would have failed to advise the Defendant that his *crimen falsi* could be used given the Defendant's high record score and the fact that Attorney so diligently elicited this testimony out of the Defendant on direct examination. In fact, during his closing argument, Attorney Palermo's even used the fact that Defendant admitted these convictions on direct examination as support of the Defendant's credibility and that he was not hiding anything from the jury. *See Id.* at 144. Based on all of these reasons, this Court finds that the Defendant's assertion on this issue are completely meritless.

**X. Plea Counsel and Trial Counsel Failed to Advise Defendant of Conflict of Interest**

In his tenth issue, Defendant presents a multifaceted conflict of interest argument. First, Defendant argues that Attorney Palermo failed to provide adequate advice as plea counsel because he was actively representing conflicting interests of the Defendant when Attorney Palermo took the case for the sole purpose of having a jury trial to add to his qualification for capital cases. Specifically, Defendant asserts that the Commonwealth's offer of 2 to 4 years was not properly communicated to him because Attorney Palermo accepted the case on the premise it would end in a trial. The Commonwealth argues that "the record is replete" with evidence the

51

Defendant always wanted to go to trial and would not accept an offer that included a state prison sentence. *See* Comm.'s Brief at 25.

The Defendant's theory on this issue derives with the procedural posture in which his case was transferred from Attorney Reibsome to Attorney Palermo and his belief as to why Attorney Palermo took the case. At some point after formal arraignment, the Defendant's case was passed on from Attorney Reibsome, a member of the Franklin County Public Defender's Office, to Attorney Palermo. Although Attorney Palermo never formally entered his appearance, he filed a Motion for Continuance on December 12, 2011, on behalf of the Defendant and first appeared in open court representing the Defendant at Call of the List on June 18, 2012.[13] Defendant claims he believed that Attorney Palermo was a member of the Public Defender's Office or was court appointed. Defendant further contends that Attorney Palermo took his case for the "sole purpose of having a jury trial to add to his qualifications in capital cases." *See* Def.'s Brief at 24.

It is undisputed that an unconstitutional conflict exists when an attorney's personal interest conflict with the interest of their client. Furthermore, the Superior Court has stated:

---

[13] It is quite likely that Attorney Palermo actually did enter an oral appearance at Call of the List but this was simply not properly docketed. At the PCRA Hearing Attorney Palermo testified that:

> Q: . . . I believe you testified that you may have
> orally entered your appearance at the call of the list date in
> this case; is that correct?
> A:**That's correct. I practiced in the judicial district
> for 10 years. You just don't show up one day. The other
> attorney's name is going to be on the docket sheet or in front
> of the judge. So I think there would be a question about why
> you're here.**
> Q: So just because it's not necessarily included in the
> docket entries doesn't mean that you didn't ask the Judge to
> have your appearance entered; is that correct?
> A:Correct, **especially with somebody like Judge Walsh.**
> He was very anal about those things. **I don't think he would
> let that slide.**

N.T. PCRA Hearing, 5/4/15, at 94. (emphasis added).

52

> When a claim of ineffective assistance of counsel is based on an alleged conflict of interest, prejudice will be presumed if counsel is shown to have had an actual conflict of interest. If an appellant can demonstrate the existence of an actual conflict of interest which adversely affected his counsel's performance, then he is entitled to a new trial. To make such a showing an appellant must demonstrate that counsel actively represented conflicting interests and that an actual conflict of interest adversely affected his lawyer's performance. An actual conflict of interest is evidenced whenever during the course of representation, the interests of appellant and the interests of another client towards whom counsel bears obligations diverge with respect to a material factual or legal issue or to a course of action. (emphasis added).

*Commonwealth v. Padden*, 783 A.2d 299 (Pa. Super. 2001).

Defendant admits that the offer of 2-4 years was conveyed to him on multiple occasions. As is the policy of this Court, this offer was discussed at length with the Defendant at his Pretrial Conference on October 29, 2012. The Defendant was made aware on the record that with his prior record score the standard range for aggravated assault was six to seven and a half years. Despite this, the Defendant rejected the Commonwealth's offer. However, Defendant now claims that it was not explained to him the "pros and cons of the plea in light of the evidence he would face at trial." Def.'s Brief at 26.

Defendant first asserts that an actual conflict of interest was present in this case because Attorney Palermo took this case for the personal reason of wanting to have a felony jury trial to help obtain his certification, which diverged with the Defendant's interest in having effective plea counsel. A complete and exhaustive review of the record in this matter concretely repudiates such an assertion. The record features a plethora of evidence that it was the intention of Defendant's to go to trial at the very outset of this case and that he absolutely would not accept any offer that included a state sentence.

53

Attorney Reibsome testified at the PCRA hearing that the Defendant was not interested in any plea at the time of the preliminary hearing. N.T. PCRA Hearing, 5/4/15, at 37. Attorney Reibsome supported this by noting that the Defendant made it clear he wanted a preliminary hearing and that had the Defendant even been "on the fence" about a deal, he would have waived the preliminary hearing in an attempt to keep the offer open. *Id.* at 37-38. Furthermore, at the PCRA hearing, Attorney Palermo testified:

> Q: So it was your understanding from Chris that this would definitely be a jury trial?
>
> A: In no uncertain terms--I'll paraphrase it--this was always an offer for state prison. **Dustin was very clear he was not taking any offer for state prison.** Chris said, I have a trial that's definitely going to trial, it's not going to plead, **Lauren is not going to offer any county sentence.** It's going to trial, you know, if you're interested, take a look at it. That's the understanding I took the case under. It was going to trial for sure, not, Hey, it might plead, it might not. **I'd much rather plead the cases than try it. I wasn't looking for more work.**
>
> **Q But you were looking for capital case certification?**
>
> **A I was--I would have done it, it wouldn't have been a problem to do it, I'll put it that way.**

*Id.* at 51-52. (emphasis added).

This testimony makes two points abundantly clear. First, it confirms the testimony of Attorney Reibsome that the Defendant was simply not interested in taking any offer that included a state sentence. More importantly, it is clear that although Attorney Palermo was looking for cases to help him achieve his capital case certification, he certainly would have pled the case out if the Defendant was interested in doing so. The record decisively indicates this was not the case and that the Defendant would not accept a state sentence. Although Defendant levies a blanket assertion that he was not made aware of the pros and concerns about going to trial, if the

Defendant had even been willing to remotely consider a plea Attorney Palermo indicated that "I would have discussed it with him. It's not my practice to bully somebody into a trial especially for something that's pro bono. I'll gladly do less work if they wanted me to, yeah." *Id.* at 94-95. It is quite clear Attorney Palermo's interest in no way diverged with the Defendant's interests in having adequate plea counsel. It is well established that the PCRA is not a vehicle for relief for defendants who suffer from "buyer's remorse" after accepting a plea deal. It appears to this Court that the Defendant in the case at bar suffers from "seller's remorse" as he has been convicted and is now serving a sentence far longer than the original offer he received numerous times from the Commonwealth prior to and during his pre-trial conference. His attempt to couch this regret in a claim that Attorney Palermo suffered from a conflict of interest is unavailing and we find it to be wholly without merit.

Defendant also claims that Attorney Palermo's representation diverged with his interest because it left him without a way to secure an expert for trial. Additionally, Defendant asserts that this alleged conflict of interests deprived him of having a zealous advocate. This Court has already previously found that Attorney Palermo had a reasonable basis for deciding not to hire a steroid expert to refute the testimony of Dr. Turchi. Instead, Attorney Palermo decided to extensively and effectively cross-examine Dr. Turchi about his lack of knowledge on the subject. Thus, Defendant's contention that Attorney Palermo may not have had a method to obtain a steroid expert is irrelevant. Finally, because we find that Attorney Palermo's personal interest did not diverge with the Defendant we also find that the Defendant was not deprived of having Attorney Palermo act as a zealous advocate on his behalf. In fact, the record reflects the opposite. For these reasons, we find that Defendant's contentions on these issues to be without merit.

55

**XI. Post-Sentence Counsel was Ineffective for Failing to Raise the Conflict of Interest Issue**

Attorney Steve Rice was the Defendant's post-sentence counsel. Defendant asserts that Attorney Rice was aware why Attorney Palermo represented the Defendant despite not being appointed. Defendant asserts that Attorney Rice was ineffective for not raising the conflict of interest issue regarding Attorney Palermo during his post-sentence motion. Defendant asserts *Commonwealth v. Balenger*, 704 A.2d 1385, 1391 (Pa. Super. 1997) is analogous to the instant matter. This Court disagrees. In *Balenger*, the Superior Court affirmed the lower court's decision that an actual conflict of interest existed and that all prior counsel were ineffective for failing to raise the issue. *Id.* at 1386. Specifically, in *Balenger*, the prosecutor had begun a relationship with the defendant's former girlfriend. *Id.* After being told by this girlfriend that the defendant was previously involved in a robbery, the prosecutor pursued charges against the defendant in order to eliminate him as a potential romantic rival. *Id.*

Clearly an actual conflict was present in *Balenger*. This is easily distinguishable from the instant matter. As explained throughout the analysis of the Defendant's tenth issue, there was no actual conflict of interest between Attorney Palermo's interest and the Defendant's interest in the case in question. Furthermore, the Commonwealth properly cites *Commonwealth v. Grant*, 813 A.2d 726, 737-738 (Pa. 2002), which held that the proper time to raise an ineffective assistance of counsel claim against pervious counsel is on collateral review. Thus, Attorney Rice could not be ineffective for failing to assert an ineffective assistance claim in a post-sentence motion.

**XII. Appellate Counsel Failed to Raise Ineffectiveness Claim**

On direct appeal the Defendant was represented by Attorney Reibsome. Again, Defendant asserts that Attorney Reibsome was ineffective for failing to raise the conflict of

interest issue regarding Attorney Palermo during direct appeal. For the same reasons stated in our analysis of Defendant's eleventh issue, we find this argument to be without merit.

## XIII. Aggregate Prejudice of Prior Counsel's Errors

In his final issue, Defendant asserts that prior counsel's errors in the aggregate illustrates that the outcome of the Defendant's trial would have been different absent them. The Pennsylvania Supreme Court has recently addressed this issue and held "that if multiple instances of ineffectiveness are found, the assessment of prejudice properly may be premised upon cumulation." *Commonwealth v. Champney*, 65 A.3d 386 (Pa. 2013) quoting *Commonwealth v. Johnson*, 966 A.2d 523 (Pa. 2009). In *Champney*, our High Court found that there were three omissions by trial counsel pertaining to impeaching a key witness for the Commonwealth. *Id.* at 668. "We would conclude none of these omissions, standing alone, is sufficiently prejudicial to warrant a new trial, but there has been no initial determination by the PCRA court regarding the cumulative prejudice of only these three omissions. . ." *Id.* Thus, the *Champney* Court remanded for determination if the three omissions were cumulatively prejudicial. *Id.*

Had Attorney Palermo acted effectively the Defendant asserts that: (1) the steroid evidence would have been excluded prior to trial or accompanied with a proper limiting instruction and a defense expert would have been offered (2) the jury would have heard the victim's preliminary hearing testimony that he was struck only 2 or 3 times, (3) there would have been no flight instruction or a proper flight instruction and (4) the jury would have received the correct defense of other/self-defense instruction. Defendant concludes that the cumulative prejudice of these alleged errors is sufficient in the aggregate to establish an ineffective assistance of counsel claim against Attorney Palermo despite that neither standing alone could do

so. This Court strongly disagrees. In cases such as *Champney* and *Johnson* multiple ineffective assistance of counsel claims satisfied the initial two prongs of *Pierce* but could not standing alone establish prejudice. This is antithetical to the circumstances in the case before this Court. This Court has found that Attorney Palermo had a reasonable basis for his actions for Defendant's first and fourth contentions on this issue. Additionally, this Court found that Defendant's second and third contentions lacked arguable merit. Consequently, the rule established in *Champney* is inapplicable to the instant matter and the Defendant's final issue is without merit.

## CONCLUSION

After careful and diligent review, the Court finds that the various issues raised by the Defendant are without merit. Pursuant to the attached Order, Defendant's PCRA Petition is DENIED.

# IN THE COURT OF COMMON PLEAS
## OF THE 39TH JUDICIAL DISTRICT OF PENNSYLVANIA
### FRANKLIN COUNTY BRANCH

| | | |
|---|---|---|
| Commonwealth of Pennsylvania, | : | **Criminal Action** |
| | : | |
| | : | **No. 1077-2011** |
| vs. | : | |
| | : | |
| | : | |
| **Dustin Paul Bailey,** | : | ***Post Conviction Relief Act*** |
| **Defendant** | : | **Honorable Carol L. Van Horn** |

## ORDER OF COURT

**AND NOW** this _20th_ day of **November, 2015,** upon review and consideration of Defendant's Amended Petition for Post Conviction Relief, , the Commonwealth's Answer to the Petition, hearing on this matter held on May 4, 2015, briefs filed by both parties and the relevant case law,

**IT IS HEREBY ORDERED** that Defendant's request for post-conviction collateral relief is **DENIED**, and his Petition under the Post-Conviction Relief Act is **DISMISSED**.

Pursuant to Pennsylvania Rule of Criminal Procedure 908(E), the Court informs the Defendant of the following

1. You have a right to appeal the decision of this Court within 30 days of the date of this decision. [Pa.R.Crim.P. 907(4); Pa.R.Crim.P. 910];

2. You have the right to assistance of counsel in preparation of the appeal. [Pa. R. Crim. P. 904(F)(2); and

3. If you cannot afford to pay an attorney to represent you in this appeal, you have a right to a court-appointed attorney and to be excused from the cost of filing and perfecting the appeal. [Pa. R. Crim. P. 904(F)(2); Pa. R. Crim. P. 904(G)].

59

3. If you cannot afford to pay the costs of filling and perfecting an appeal, you have the right to be excused from paying for the appeal. [Pa.R.Crim.P. 904(G)].

*The Clerk of Courts is directed to mail a copy of this Order of Court containing Petitioner's right to appeal by Certified Mail, Return Receipt Requested upon Petitioner as required by Pa. R. Crim. P. 908(E). The Clerk shall otherwise comply with the requirements of Pa. R. Crim. P. 114.*

By the Court,

_____
Carol L. Van Horn, P.J.

The Clerk of Courts shall give notice to:
Lauren E. Sulcove, Esq., First Assistant District Attorney
Carolyn A. Jones, Counsel for Defendant
Dustin Paul Bailey, Defendant

NOV 24 2015
_____, 2015. A copy of the within Order has been mailed to the Petitioner by certified mail, Certified
Mail No. 7014 2870 0000 7022 3061 _____, Return Receipt Requested.

_____
Clerk of Courts

U.S. Postal Service™
CERTIFIED MAIL® RECEIPT
Domestic Mail Only

For delivery information, visit our website at www.usps.com®.

OFFICIAL USE

| | | |
|---|---|---|
| Postage | $ | |
| Certified Fee | | |
| Return Receipt Fee (Endorsement Required) | | Postmark Here |
| Restricted Delivery Fee (Endorsement Required) | | |
| Total Postage & Fees | $ | |

Sent To Dustin Paul Bailey, Inmate LA8711
Street & Apt. No., SCI Somerset
or PO Box No. 1590 Walters Mill Road
City, State, ZIP+4 Somerset, PA 15510

PS Form 3800, July 2014          See Reverse for Instructions

60